FRANK JACOBS *v.* HAROLD THOMAS
(6727)

SPALLONE, STOUGHTON and NORCOTT, Js.

Argued December 7, 1988—decision released April 25, 1989

*Kerry M. Wisser,* for the appellant (plaintiff).
*Charles W. Bauer,* for the appellee (defendant).

SPALLONE, J. The plaintiff appeals from the judgment rendered after the trial court directed a verdict for the defendant. The plaintiff claims the trial court erred (1) in directing the verdict for the defendant, and (2) in refusing to allow the plaintiff's expert to testify for the purpose of establishing prospective profits, which, the plaintiff claimed, was a proper measure of damages for the defendant's breach of their partnership agreement. Our decision on the plaintiff's first claim of error is dispositive of the appeal. We find error.

The plaintiff brought an action for damages against the defendant for breach of an oral partnership agreement.[1] At trial, the plaintiff offered evidence intended

---

[1] The plaintiff's Amended Complaint set forth the following allegations:

"1. In May of 1985 the plaintiff proposed to the defendant, and he accepted, a partnership for the purchase and rehabilitation of the premises known as 162–164 and 166–168 Homestead Avenue in Hartford, Connecticut, which premises consist of two six-family houses.

"2. The plaintiff and the defendant were equal partners for the acquisition, rehabilitation and ownership of the premises.

"3. The plaintiff prepared a contract between the owner of the premises and the defendant (as the transaction was being done in defendant's name) and tendered to the defendant a check for one-half of the deposit.

"4. The plaintiff maintained contact with the defendant for the months following May 1985 during which time the defendant assured the plaintiff that he was finalizing the deal with the seller.

"5. In December 1985, the plaintiff's check was returned, never having been cashed, and the defendant informed the plaintiff that the plaintiff would no longer be involved in the acquisition or rehabilitation of the premises.

"6. Subsequent thereto, the plaintiff became aware of the fact that the defendant had purchased the premises in October of 1985.

to establish that the plaintiff and the defendant entered into an oral agreement to form a partnership for the purpose of purchasing and rehabilitating two apartment buildings and thereafter either renting the apartments or selling the buildings. The plaintiff testified about the various discussions he had had with the defendant regarding the project and about their efforts to estimate the costs associated with it. Testimony regarding the parties' agreement was presented. At the close of the evidence, the defendant moved for a directed verdict. After questioning the plaintiff's counsel regarding the plaintiff's claims,[2] the court granted the defend-

---

"7. As a result of the actions of the defendant aforesaid, the plaintiff was deprived of the benefit of his bargain and lost the expectancy of acquiring and rehabilitating said premises, all to his loss and damage."

[2] The following interchange took place between the court and the plaintiff's counsel:

"The Court: And what was said in the agreement about the purchase price of the buildings?

"Mr. Wisser: Sixty-five thousand dollars was what they wanted to purchase the building for. Again, I believe it's very reasonable to assume that something in that area —

"The Court: What was said? What was the agreement?

"Mr. Wisser: They would offer —

"The Court: Of the purchase price of the building?

"Mr. Wisser: They would offer sixty-five thousand dollars for the building.

"The Court: And then what was the agreement in regard to what would happen if the sixty-five thousand dollars were refused?

"Mr. Wisser: As long as the numbers worked —

"The Court: I am talking about Mr. Jacobs' testimony. *What specific agreement has he testified to as to what would happen if the sixty-five thousand dollars was not enough?*

"Mr. Wisser: He did not specifically testify as to what would be done in that situation.

"The Court: *So if the sixty-five thousand dollars weren't enough the partnership agreement is at an end, isn't it?*

"Mr. Wisser: No, I think from the testimony that Mr. Jacobs testified to it can clearly be inferred and it can reasonably be inferred that they had figured out the numbers and what it was worth to do the building and what

—

"The Court: Now you are speculating like a magician. *Under what theory, basis or fact is there any agreement by Mr. Thomas that he will offer ten cents more than sixty-five thousand dollars?*

ant's motion for a directed verdict, ruling that there was no evidence that the buildings ever could have been purchased for $65,000, the amount the plaintiff had testified the parties planned to pay, and that, without such evidence, there was no proof of a contract. The court denied a subsequent motion by the plaintiff to set aside the verdict.

The trial court's ruling was based upon an implicit factual assumption: that the parties intended and agreed that their agreement was conditioned upon successful negotiation of a purchase price for the buildings of no more than $65,000. The court in effect made a factual finding regarding a term of the alleged oral agreement entered into by the parties. In so doing, the court improperly assumed the jury's factfinding function. Litigants have the right to have issues of fact as to which there is room for a reasonable difference of opinion among fairminded people passed upon by the jury and not by the court. *Palomba* v. *Gray,* 208 Conn. 21, 25, 543 A.2d 1331 (1988); *Seals* v. *Hickey,* 186 Conn. 337, 350, 441 A.2d 604 (1982); *Dacey* v. *Connecticut Bar*

"Mr. Wisser: The fact that they agree on this agreement.

"The Court: To do what, to buy it for a million?

"Mr. Wisser: No, your Honor.

"The Court: To buy it for two million?

"Mr. Wisser: No, your Honor.

"The Court: *Then what specific facts have we got that Mr. Thomas is ever going to spend more than sixty-five thousand dollars?*

"Mr. Wisser: They had a formula which they used.

"The Court: What was the formula? I didn't hear any formula.

"Mr. Wisser: The numbers that were —

"The Court: What numbers? Tell me them.

"Mr. Wisser: The numbers that Mr. Jacobs put on his calculator that Mr. Thomas indicated were written down which said when it was a good deal and when it wasn't.

"The Court: And what were those numbers?

"Mr. Wisser: We don't have specifics.

"The Court: Of course, you don't have specifics.

"Mr. Wisser: We had between a hundred and —

"The Court: You haven't got a case either." (Emphasis added.)

*Assn.,* 170 Conn. 520, 540, 368 A.2d 125 (1976). Whether an oral partnership agreement has been entered is a question of fact. 59A Am. Jur. 2d, Partnership § 211. The terms of such an agreement are ascertained by determining the intent of the parties, which is a question of fact. See *Kasper* v. *Anderson,* 5 Conn. App. 358, 361, 498 A.2d 132, cert. denied, 197 Conn 818, 501 A.2d 388 (1985). It is the jury's function to determine which inferences should be drawn from evidential facts if reasonable minds may differ as to the inferences to be drawn, even where those facts do not seem to be in dispute. 59A Am. Jur. 2d, Partnership § 210.

Our review of the record reveals that the facts regarding the existence and terms of the alleged oral agreement between the parties were in dispute at trial. The testimony conflicted on these issues, and resolution of the factual questions raised depended upon judgments regarding the credibility of the witnesses, the weight to be given the evidence, and the inferences to be drawn from the testimony. These are matters for the jury. *Dacey* v. *Connecticut Bar Assn.,* supra. The trial court erred in making a factual finding regarding the content of the alleged agreement between the parties and directing a verdict on that basis.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.