[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above two cases were heard by this court commencing on November 19, 1990, and continuing for divers days until January 23, 1991. Briefs were filed and delivered to court on February 5 and 6 respectively, and accepted. The court finds that Earl I. Williams is the principal defendant in case #CV 88 0285343S and the majority shareholder and principal of Keyes Funeral Homes, Inc. in case #CV 88 0271449S.
James R. Sanders is the plaintiff in case #CV 88 0285343S and also the principal defendant in case #CV 88 0271449S. The cases, intertwined as they are, were heard as one.
In Sanders v. Williams, the plaintiff alleges that in 1975, he and the defendant formed a partnership orally, to operate a funeral business from 69 Pearl Street in Waterbury, Connecticut. This building at 69 Pearl Street was owned by Sara and Mack Keyes prior to 1973, where they operated a funeral home in partnership with a Hilda Robinson, known as the Keyes Funeral Home. Also, prior to 1973, Sara and Mack Keyes owned a New Haven funeral business, and the real property that they operated a funeral business from, at 59 Dixwell Avenue in New Haven, Connecticut. Thus the Keyes owned totally and operated a New Haven funeral business from a location they totally owned in New Haven at 59 Dixwell Avenue in New Haven. The Keyes owned totally 69 Pearl Street in Waterbury, Connecticut, the location from which they operated a funeral business in partnership with Henry and Hilda Robinson.
Earl I. Williams is a nephew of Mack and Sara Keyes, and came CT Page 2698 to live with them as a young person in 1939 in the Waterbury location. He literally grew up in the business, and subsequently went to embalming school, and is now a licensed embalmer and funeral director. Mr. Williams, who also is now and has been for some time, a practicing attorney, purchased the Keyes partnership interest in the Keyes Funeral Home in Waterbury and New Haven as well as the real property where the two funeral homes are located in Waterbury and New Haven, in 1973.
At this point in time, he owns it all except for the half interest in the business that was owned by Henry and Hilda Robinson in Waterbury. Mr. Williams acquired the Robinson's interest in the Waterbury business in 1979 after the death of Hilda Robinson.
During the years 1973-1979, Mr. Williams and the Robinsons operated as partners, whereby, after all costs of funerals and operations were deducted, the pure net profit then remaining was divided 50/50 between Mr. Williams and the Robinsons.
Prior to 1975, Hilda Robinson was the manager of the Waterbury business and ran the day-to-day operation. Mr. Williams, a lawyer and businessman, handled the financial operations of the business. With the illness and ultimate deaths of Mrs. Robinson and Mr. Harry Ammons, the New Haven manager of his business there, within a short space of time, Mr. Williams realized he needed replacement help.
In 1975, Mrs. Robinson had recommended James Sanders to Harry Ammons, the New Haven manager for Williams, as her possible replacement in Waterbury.
Mr. Sanders was a Waterbury native, a young man, an embalming school graduate, who had already served a two year apprenticeship in South Carolina. Additionally, Mr. Sanders was well known to Mrs. Robinson, having worked part time for her in the Waterbury funeral home since he was in high school. He was black and eligible to be a licensed funeral director in Connecticut, and had already passed the Connecticut state licensing examinations.
In April 1975, Mr. Williams invited Mr. Sanders to the New Haven funeral home to discuss Sanders as a possible replacement employee for Hilda Robinson as an embalmer and funeral director.
At this meeting in 1975, Sanders alleges that Williams asked him to become a partner in the Waterbury Keyes Funeral Home. Bear in mind that the Robinsons were a partner in that operation until 1979.
Mr. Sanders has alleged that Williams and Sanders formed a CT Page 2699 partnership in 1975 and that this partnership continued until June 1988, when it was dissolved. He contends that the terms were documented and expanded in 1984 in a written agreement.
Against those allegations are these facts.
Williams could not have made Sanders a partner in 1975, because Hilda Robinson and her husband were his partners and owned 50% of the Waterbury operation until 1979.
The statute of frauds, 52-550(4), precludes an oral partnership agreement involving a real estate interest transfer unless it be written and there was no written agreement or memoranda between the parties in 1975.
At the time Mr. Sanders alleges the agreement came into existence, no consideration was given by him for the real property involved.
Mr. Sanders' compensation that he accepted in 1975 was agreed to be one-half of the net proceeds of each funeral conducted by the Waterbury funeral home. No other expenses or the cost of operations were charged or paid by him. Williams paid those costs. This is consistent and in keeping with an employee status as Williams contends Sanders was. Subsequently when Sanders needed more money to support his family, Williams increased his income from half of the net from each funeral to a weekly salary or draw against the funerals he participated in, plus a semi-annual bonus, all commensurate with the treatment of an employee.
There was testimony that Mrs. Sanders referred to his compensation as weekly salary and that Sanders called himself a manager, not a partner. In 1982, Mr. Sanders' lawyer, Mr. Fasano, wrote to Mr. Williams concerning an agreement contemplated regarding Sanders' acquisition of a 50% interest in the funeral home, not a "pro" remark for Sanders.
Negotiations in re a partnership continued to and through April 4, 1984, between Williams, Fasano and Sanders. The writings expressed the fact that no partnership had been formed.
Then, on the night of April 5, 1984, Williams scripted an alleged partnership agreement that the parties signed at its end, with a separately signed provision on the same sheet of paper that stated, "No business of the partnership of any kind shall take place unless both parties agree."
The next day, April 6, 1984, Williams renounced the alleged agreement and told Sanders to take it to Fasano to see if something could be worked out. CT Page 2700
On July 19, 1984, Fasano referred to Sanders in a letter to Williams, as a "key and valued employee of yours."
Sanders, Williams and Fasano continued to negotiate over the next five months to no avail, to reach an agreement. Indeed, in his July 19, 1984 letter to Williams, Fasano states that Sanders has not participated in the management of the business as an equal partner, and admits that Williams has run the business as a sole proprietor.
Sanders refused to participate in the making of business loans for the benefit of the business. Williams made the loans, put the money into the business, and repaid them himself.
Sanders deposited moneys he was paid for funerals he conducted in a personal bank account and made no accounting of funds to Williams and interposed objections and blocking to Williams attempts to gain such knowledge.
Williams paid the federal income taxes on the business and sent Sanders' W-2 forms showing the earnings Williams knew he received. Williams in his IRS returns, showed his profit or loss of income on the required Sole Proprietor's Schedule C.
Sanders did participate in a $4000 bank loan that was used to buy a desk, secretary, and "Judge's" chair for himself, that was installed and still is in his home office.
In a subsequent letter from Sanders to Williams, he admits in so many words that the business was always Williams' and that none of the partnership negotiations were ever consummated.
"Connecticut courts have determined that whether an oral partnership agreement has been entered into, is a question of fact." Jacobs v. Thomas, 18 Conn. App. 218, at 222. "A partnership is an association of two or more persons to carry on as co-owners a business for profit." Uniform Partnership Act, Sec. #6.
Whether the newly trained and licensed embalmer and funeral director skills brought to Waterbury by Mr. Sanders were sufficient to offset a going business that owned its property, possessed a well-known and valued name: is consideration, is highly debatable. Mr. Sanders left jobs in South Carolina, political contacts, and his wife was a South Carolina woman. He came to a job and made political contacts in Connecticut.
This court cannot see any proof in the offerings of Mr. Sanders that show he was more than a funeral director, and was CT Page 2701 engaged in the funeral business in Waterbury as an employee of Mr. Williams, and it so finds.
In case #CV 88 0271449S, claims for relief advanced by Earl I. Williams and/or the Keyes Funeral Homes, Inc. are granted as to the March 17, 1989 filing of Claims for Relief; as to claims #1, #2, #3, #4, #5, #6, #7 and #8 (after the completion of the audit as ordered in paragraph #2.)
Claim #9 as it pertains to the 4th Count of the Amended Complaint as of March 14, 1989, is denied.
Claims #10 and #12 are granted, and Claim #11 is denied.
Judgment may enter for the plaintiff as ordered.
As to case #CV 88 0285343S, complaint of July 12, 1988 against the defendants Earl I. Williams and Keyes Funeral Homes, Inc., claims #1, #2, #3, #4, #5, #6, #7, #8, #9, #10 and #11 are denied.
Judgment may enter for the defendants as ordered.
Whatever partnership ever existed did so from the time it was drawn by Mr. Williams on April 4, 1984 and ceased to exist with his renunciation of same on April 6, 1984. Prior to the above dates, and after the above dates, the court finds that no partnership ever came into existence between these parties.
WILLIAM BEALE RAMSEY, STATE TRIAL REFEREE