## FRANK JACOBS *v.* HAROLD THOMAS
## (9509)

FOTI, LANDAU and CRETELLA, JS.

Argued September 26—decision released December 31, 1991

*Jeffrey J. Mirman,* with whom, on the brief, was *Peter B. Rustin,* for the appellant (defendant).

*Kerry M. Wisser,* for the appellee (plaintiff).

LANDAU J. The defendant appeals from the judgment of the trial court awarding the plaintiff compensatory damages in the amount of $45,800. On appeal, the defendant claims that the trial court improperly (1) concluded that the oral partnership agreement claimed by the plaintiff was not within the statute of frauds, (2) allowed the plaintiff's expert to testify as to the damages suffered by the plaintiff, and (3) precluded the defendant from introducing evidence. We affirm the judgment of the trial court.

This action for a breach of an oral partnership agreement to purchase and to rehabilitate certain properties located in Hartford is before this court for the second time.[1] Because the pertinent facts relating to the underlying action are set forth in *Jacobs* v. *Thomas,* 18 Conn. App. 218, 557 A.2d 145 (1989), a brief summary of the facts will suffice to establish the context of this appeal.

The plaintiff and the defendant entered into an oral agreement to purchase and to rehabilitate two parcels of residential property. The plaintiff tendered a check to the defendant, dated July 2, 1985, in the amount of $500 as a down payment for the subject properties. The check was returned to the plaintiff, not cashed, and the defendant informed the plaintiff that he was no longer interested in pursuing the deal with the plaintiff. Thereafter, in October, 1985, the defendant and his wife independently purchased the subject properties.

Prior to commencement of this trial for damages for breach of contract, the defendant, through a motion in limine, attempted (1) to preclude the plaintiff from introducing evidence concerning the alleged oral partnership agreement asserting that the agreement

---

[1] In *Jacobs* v. *Thomas,* 18 Conn. App. 218, 557 A.2d 145 (1989), this court reversed the trial court's judgment rendered on a directed verdict in favor of the defendant.

involved an interest in land that was governed by the statute of frauds, and (2) to prohibit the plaintiff's expert from testifying as to the value of the properties at issue rather than to the value of an ongoing business concern. The trial court denied the motion.

At trial the plaintiff again "offered evidence intended to establish that [he] and the defendant had entered into an oral agreement to form a partnership for the purpose of purchasing and rehabilitating two apartment buildings and thereafter either renting the apartments or selling the buildings"; id., 219–20; and introduced expert testimony as to the value of the properties. He also successfully precluded the defendant from introducing the plaintiff's check ledger into evidence for the purpose of demonstrating that there were insufficient funds in the plaintiff's checking account to cover the check that the plaintiff gave to the defendant for one half of the deposit on the properties. The jury rendered a verdict in favor of the plaintiff in the amount of $45,800. The defendant filed a motion to set aside the verdict, which was denied.

In its memorandum of decision, the trial court found that (1) the partnership was not for an interest in real estate as contemplated by the statute of frauds, (2) the plaintiff's witness was qualified to testify as an expert, and (3) the testimony regarding the plaintiff's alleged damages was appropriate in that it correctly set out the measure of damages in a breach of contract action. The court also listed four reasons for excluding the evidence to challenge the validity of the plaintiff's check.

I

The defendant first claims that the trial court improperly concluded that the oral partnership agreement did not fall within General Statutes § 52-550, Connecticut's statute of frauds. His argument is twofold. He argues first that this agreement constitutes an interest in real

estate that the statute of frauds has been interpreted to include,[2] and, second, that this was an undertaking that was not capable of being completed within a period of one year.[3] We disagree.

A

General Statutes § 52-550 provides in pertinent part: "No civil action may be maintained . . . unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property; or (5) upon any agreement that is not to be performed within one year from the making thereof . . . ."

These two subsections of General Statutes § 52-550 were at issue in the case of *Maguire* v. *Kiesel,* 86 Conn. 453, 85 A. 689 (1913). In *Maguire,* "the plaintiff and defendant entered into an oral agreement to share equally in the profits that should be made from the purchase of a lot of land, the building and rental of a house thereon, and the sale thereof, if an opportunity to sell

---

[2] The defendant has conceded that the position he is advancing is the minority viewpoint.

[3] The plaintiff does not argue that the $500 check constituted a memorandum sufficient to satisfy the statute of frauds. To comply with the statute of frauds "an agreement must state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof, or from a reference contained therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." *Montanaro* v. *Pandolfini,* 148 Conn. 153, 157, 168 A.2d 550 (1961). In *Breen* v. *Phelps,* 186 Conn. 86, 91, 439 A.2d 1066 (1982), the Supreme Court held that an agreement set forth on the reverse side of a money order that stated "[t]his sum as a deposit on the Henry Phelps or Mrs. Anna Phelps property at agreed price of $5,000.00 (Five Thousand Dollars) by the parties being Anna Phelps and William R. Breen" was insufficient to comply with the statute of frauds. Here, the check presented as a down payment stated even less. All that was printed on the check tendered by the plaintiff was the address of the subject properties.

should be had. No time limit was placed upon the continuation of the agreement, but it might have been fully performed within one year." Id., 454.

In addressing the defendant's claim that this was an interest in real estate and thus fell within the purview of the statute of frauds, our Supreme Court concluded that the statute contemplated only a " 'transfer of lands, or some interest in them.' . . . The subject-matter of the agreement was not land or any interest therein. It was a fund of money representing profits from a joint enterprise in the nature of a partnership." (Citation omitted.) Id., 457–58, citing *Bunnel* v. *Taintor,* 4 Conn. 568, 573 (1823).[4] In concluding that this "agreement for a joint enterprise in the nature of a copartnership which has for its purpose the purchase, improvement, and sale of real estate *for the profit arising therefrom* . . . is not within the statute"; (emphasis added) *Maguire* v. *Kiesel,* supra, 458; the court acknowledged that the "overwhelming weight of authority in other jurisdictions is to the same effect . . . ." Id.

The defendant seeks to distinguish *Maguire* by arguing that the agreement in the present case expressly envisioned the acquisition of title to the properties while the agreement at issue in *Maguire* did not. The defendant, however, overlooks the fact that in *Maguire* the acquisition of title to the property at issue was similarly envisioned by the parties. The court expressly found that "[i]t was a part of the agreement that the defendant should have the title of the land conveyed to himself and the plaintiff jointly." Id., 454. The factual scenario of the present case is indistinguishable from that of *Maguire.* Here, the plaintiff and defendant also entered into an oral agreement to acquire two

---

[4] *Bunnel* v. *Taintor,* 4 Conn. 568 (1823), which was factually identical to *Maguire,* also held that the oral contract at issue in that case was not within the statute of frauds.

parcels of property and envisioned the transfer of title with the underlying purpose of the acquisition being for monetary gain not for personal enjoyment of the property.

"Although this enterprise was one which contemplated and involved the management of real estate and a division of funds derived from its rental and sale, it was, not the real estate, but the funds in which the plaintiff claims an interest by reason of the agreement." *Faiola* v. *Faiola,* 156 Conn. 12, 21, 238 A.2d 405 (1968). The primary purpose of the statute of frauds is "to provide reliable evidence of the existence and the terms of the contract . . . ." *Heyman* v. *CBS, Inc,* 178 Conn. 215, 221, 423 A.2d 887 (1979). Our conclusion that the subject of the oral agreement was a fund representing profits from a joint enterprise in the nature of a partnership rather than an interest in real estate is consistent with this purpose. The particular terms of the agreement are irrelevant. The only relevant factor is that the plaintiff and the defendant were partners in a venture the sole purpose of which was financial gain. Because we adopt the *Maguire* court's interpretation of the applicability of the statute of frauds to this type of agreement, the defendant's first argument must fail.

### B

The defendant also claims that the trial court improperly concluded that the oral partnership agreement did not fall within the statute of frauds because it found that the agreement could have been completed within one year from the date of the agreement. Specifically, the defendant argues that because the partnership envisioned by the plaintiff was an ongoing business it was governed by the one year rule of the statute of frauds. We disagree.

In order to preserve full review of a trial ruling challenged in an appeal from a judgment rendered on a jury

verdict, it is incumbent on the appellant to move to set aside the verdict. *Small* v. *South Norwalk Savings Bank,* 205 Conn. 751, 758, 535 A.2d 1292 (1988); *Voight* v. *Selman,* 14 Conn. App. 198, 200, 540 A.2d 104 (1988). Because the defendant did not present this claim to the trial court in its motion to set aside the verdict, our standard of review is limited to a determination of whether the trial court committed "plain error." Practice Book § 4185; *Cuartas* v. *Greenwich,* 14 Conn. App. 370, 374–75, 540 A.2d 1071 (1988); *Voight* v. *Selman,* supra; *DeLorenzo* v. *Great Atlantic & Pacific Tea Co.,* 4 Conn. App. 560, 561, 495 A.2d 1106 (1985). The purpose of this rule is "to provide an opportunity for the trial court to pass upon claims of error which may become the subject of an appeal." *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 514, 441 A.2d 163 (1981).

Here, the court did not expressly find that the parties entered into an agreement providing that the plaintiff was to become a partner with the defendant in a joint venture that was not to be performed within one year, as claimed by the defendant. Nor did the defendant, in his motion to set aside the verdict, challenge this aspect of the statute of frauds. In his motion to set aside the verdict, the defendant challenged the trial court's "allowing evidence of a partnership to purchase real property in the absence of a written document." Consequently, the defendant can prevail only if the court committed plain error.

It is axiomatic that "[w]here the time for performance is definitely fixed at more than one year, the contract is, of course, within the statute." *Burkle* v. *Superflow Mfg. Co.,* 137 Conn. 488, 492–93, 78 A.2d 698 (1951). Our most apposite precedent, however, comports with the majority view that a contract of indefinite duration is not subject to the one year provision of the statute of frauds. *C. R. Klewin, Inc.* v. *Flagship Properties, Inc.,* 220 Conn. 569, 600 A.2d 772

(1991); *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 197, 520 A.2d 208 (1987), citing *Burkle* v. *Superflow Mfg. Co.*, supra; see also 1 Restatement (Second), Contracts § 130, comment a; 2 A. Corbin, Contracts (1950) §§ 444 and 445; 3 S. Williston, Contracts (3d Ed. Jaeger) § 500. " 'Under the prevailing interpretation, the enforceability of a contract under the one year provision does not turn on the actual course of subsequent events, nor on the expectations of the parties as to the probabilities. Contracts of uncertain duration are simply excluded; the provision covers *only* those contracts whose performance *cannot possibly* be completed within a year.' (Emphasis added.) 1 Restatement (Second) Contracts, supra; *Burkle* v. *Superflow Mfg. Co.*, supra." *Finley* v. *Aetna Life & Casualty Co.*, supra.

It is undisputed that the agreement to purchase and to rehabilitate the subject properties was of indefinite duration. The defendant presents no evidence in support of his assertion that the agreement could not possibly be performed within one year. When reviewing for plain error, we look for only " 'manifest injustice amounting to plain error under all the circumstances.' *Valley* v. *Fazzina*, 187 Conn. 423, 428, 446 A.2d 1068 (1982)." *Small* v. *South Norwalk Savings Bank*, supra, 760. Applying that standard in this case, we find no error that "is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985). We conclude, therefore, that this argument also fails.

## II

The defendant next claims that the trial court improperly permitted the plaintiff's expert, a real estate appraiser, to testify as to the damages suffered by the plaintiff. In his motion to set aside the verdict, the defendant argued that the trial court improperly

"allow[ed] evidence from a real estate appraiser, as to projected value after rehabilitation, as the measure of damages when evidence of such damages should have been limited to the value of the agreement, the value of the lost business opportunity on the day of the breach . . . ."[5] In denying the defendant's motion, the trial court concluded that the proffered testimony offered the jury a sound basis on which to determine damages in accordance with standards enunciated by our Supreme Court in *West Haven Sound Development Corporation* v. *West Haven*, 201 Conn. 305, 514 A.2d 734 (1986). We agree with the trial court.

In *West Haven Sound Development Corporation* v. *West Haven*, supra, the defendant challenged the trial court's ruling that permitted the plaintiff's expert witness to testify to the value of the plaintiff's business at the time of the alleged breach. In permitting the expert to testify as he did,[6] the court admitted his testimony as a computation of expected future earnings capitalized to the present value.

" 'The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed.' " Id., 319; *Beckman* v. *Jalich Homes, Inc.*, 190 Conn. 299, 309, 460 A.2d 488 (1983). Damages for breach of contract are to be determined at the time of the occurrence of the breach. *Kevin Roche-John Dinkeloo & Associates* v. *New Haven*, 205 Conn. 741, 749, 535 A.2d 1287 (1988); *Gordon* v.

---

[5] The defendant does not challenge the qualifications of the plaintiff's expert to value the properties.

[6] The plaintiff's expert predicted the profits that the plaintiff would have earned had the contract not been breached. He then computed the net present value of these future earnings to arrive at a valuation of the plaintiff's interest at the time of the breach. *West Haven Sound Development Corporation* v. *West Haven*, 201 Conn. 305, 317, 514 A.2d 734 (1986).

*Indusco Management Corporation,* 164 Conn. 262, 272, 320 A.2d 811 (1973). Courts have traditionally "held that a party may recover 'general' contract damages for any loss that 'may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself.' *Hadley* v. *Baxendale,* 9 Ex. 341, 354, 156 Eng. Rep. 145 (1854); see Farnsworth, Contracts (1982) § 12.14, p. 874 n.5; McCormick, Damages (1935) § 138, pp. 564–65; Dobbs, Remedies (1973) § 12.3 p. 804; 3 Restatement (Second) [Contracts] § 351 (2) (a) . . . . [The Connecticut courts have] consistently applied the general damage formula of *Hadley* v. *Baxendale* to the recovery of lost profits for breach of contract, and it is [the] rule that '[u]nless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach.' *Kay Petroleum Corporation* v. *Piergrossi,* 137 Conn. 620, 624, 79 A.2d 829 (1951) . . . ." *West Haven Sound Development Corporation* v. *West Haven,* supra, 320.

In his complaint, the plaintiff alleged that "[a]s a result of the actions of the defendant aforesaid, the plaintiff was deprived of the benefit of his bargain and lost the expectancy of acquiring and rehabilitating said premises, all to his loss and damage," and sought money damages and "[s]uch other legal relief as the court deems appropriate." These assertions can properly be considered requests for recovery for the damage suffered by the plaintiff through a wrongful termination of a contract. Where such is the case, the entire damage, both past and prospective, may be recovered in a single action. *Maguire* v. *Kiesel,* supra, 460. "The measure of damages in the present case is therefore reasonable compensation for the loss which the plaintiff suffered in being wrongfully deprived of the benefit of the agreement. That which it provided

for was a sharing of profits. Such profits were, therefore, within the contemplation of the parties. . . . The measure of the loss must be found in the profits which under the agreement the plaintiff would have been entitled to receive." (Citations omitted.) Id.

At trial, the plaintiff's expert testified as to the projected value of the subject properties in 1985 had the defendant not breached the contract and had the plaintiff been permitted to rehabilitate the buildings. This sum was then reduced by the amount equal to the value of one year's time that it would have taken the parties to complete the anticipated construction. Because the prospective profits as testified to by the plaintiff's expert were not speculative or remote, but were reasonably to be expected in the ordinary course of events; id., 461; the trial court properly permitted the plaintiff's expert to value the subject properties as he did.

## III

The defendant's final claim is that the trial court improperly excluded evidence that the plaintiff had insufficient funds in his account to cover the check written as a deposit for the purchase of the subject properties. Here, too, the defendant's argument is twofold. He argues that the trial court's denial precluded him from presenting relevant evidence and also denied him his constitutional right to cross-examine the witnesses against him. We disagree.

## A

To corroborate his assertion of the existence of an oral agreement with the defendant, the plaintiff introduced into evidence a $500 check he had made payable to the defendant as a partial deposit on the properties. In response, the defendant attempted to offer into evidence the plaintiff's check ledger to demonstrate that

there were insufficient funds in the plaintiff's account at the time the check was drawn to honor the check. The trial court set forth four grounds for excluding the proffered evidence: (1) it did not challenge the plaintiff's credibility because the check was offered only as corroboration of the plaintiff's claimed oral contract; (2) the check ledger was in no way proof of the validity of the check; (3) the check had never been tendered by the defendant, so its validity was not in question; and (4) it was inadmissible extrinsic evidence.

Evidence is relevant if it has a tendency to establish the existence of material facts, i.e., those facts directly at issue. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. See *State* v. *McClendon,* 199 Conn. 5, 8–9, 505 A.2d 685 (1986).

The check was offered for the sole purpose of corroborating the existence of the oral agreement. Had the check ledger been offered to challenge this assertion, it is axiomatic that it would have been admissible, relevant evidence. The defendant, however, offered this evidence not to challenge the plaintiff's assertion that an oral agreement existed, but to demonstrate the plaintiff's inability to honor the check. The plaintiff's ability to honor the check was not material. Because the evidence offered by the defendant was immaterial it was properly excluded by the trial court.

### B

The defendant also claims that in preventing him from introducing this evidence the trial court improperly denied him his right to cross-examine witnesses. Although a criminal defendant does in fact have a federal and state constitutional right to cross-examine witnesses; U.S. Const., amend. VI; Conn. Const., art. I,

§ 8; *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Maldonado,* 193 Conn. 350, 356, 478 A.2d 581 (1984); a defendant in a civil action has no comparable constitutional right. *Struckman* v. *Burns,* 205 Conn. 542, 549, 534 A.2d 888 (1987). In the context of a civil case, our Supreme Court, in accepting a common law right to cross-examination, stated "[t]he right of cross-examination is not a privilege but an absolute right and if one is deprived of a complete cross-examination he has a right to have the direct testimony stricken." *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 271, 320 A.2d 811 (1973); see also *Connecticut Natural Gas Corporation* v. *Public Utilities Control Authority,* 183 Conn. 128, 140 n.10, 439 A.2d 282 (1981). This right does not, however, permit the defendant to present evidence that is irrelevant or otherwise inadmissible. Because we conclude that this evidence was properly excluded, the trial court's ruling did not deny the defendant his right, constitutional or otherwise, to cross-examine the witnesses against him.

The judgment is affirmed.

In this opinion the other judges concurred.