[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: SETTLEMENT AGREEMENT
At issue here is a settlement conference and the alleged agreement that derives therefrom. On Friday, April, 3, CT Page 7545 1992, the parties, plaintiff Anne Zauner and defendant Leonie Brewer, together with counsel, attended a pretrial conference at the Litchfield Superior Court. At said conference, the parties agreed upon a settlement ("the settlement"), and counsel reported such settlement to the court, Dranginis, J., which relied on such representations by excusing the parties from further attendance and by ordering the filing of a withdrawal within thirty (30) days. Counsel were to reduce the terms of the settlement to writing and exchange the appropriate documents. However, three (3) days later, Ms. Brewer's counsel received a telephone call from the plaintiff's attorney, during which the former was informed that the plaintiff had changed her mind regarding the settlement. Consequently, the defendant filed a motion for judgment in accordance with the settlement agreement.
At a hearing before this court, it was testified to that the settlement provided, inter alia, that the defendant would surrender her life estate to the plaintiff by quit claim deed; that the defendant would assign the lease of the premises to the plaintiff including the rents due on April 15, 1992, and thereafter, and the defendant would notify the tenant of the assignment and the change of ownership of the premises; that the plaintiff would undertake to sell the premises; that upon such sale, the plaintiff would pay the defendant $90,000.00, said obligation secured by a mortgage on the premises; that if the premises were not sold within six months, the plaintiff would pay $5,000.00 to the defendant every six months until the premises were sold, said payments to be credited to the plaintiff against the $90,000.00 otherwise due on the sale of the premises. Testimony of Attorney Lisa Damon, Counsel for the Plaintiff.
When Ms. Zauner testified, she did not dispute the aforesaid. However, she stated that she did not understand that the settlement agreement was binding and that, after further consultation with her advisors, she cannot honor the settlement because she is paying too much, there has been severe waste to the property, and she perceives adverse tax and estate planning consequences. Testimony of Anne B. Zauner.
The plaintiff now contends that the agreement is not enforceable because (1) no agreement was actually reached, as the settlement required preparation of implementing documentation and because there were four additional terms that needed resolution; and (2) the settlement involves the transfer of an interest in real estate, and there is no writing memorializing the agreement. Therefore, claims the plaintiff, any settlement agreement is violative of the Statute of Frauds. CT Page 7546
Whether or not a contract was entered into is determined by "[t]he intention of the parties manifested by their words and acts." Hess v. Dumouchel Paper Co., 154 Conn. 343,347, 225 A.2d 797 (1966) (emphasis added). See also Garrison v. Garrison, 190 Conn. 173, 175, 460 A.2d 945
(1983). The intention of the parties is a question of fact. A. Dubreuil Sons., Inc. v. Lisbon, 215 Conn. 604, 609,577 A.2d 709 (1990). The "assent requisite to the creation of a contract is an objective thing, manifested by intelligible conduct, act, or sign; it is not determined by secret intentions but by expressed or manifested intentions." Alteri v. Layton, 35 Conn. Sup. 258, 259, 408 A.2d 17, 18
(1979, Spada, J.) (Emphasis added.)
In the present matter, the parties reported to the court that a settlement was reached. It is well recognized that an agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties. Pugh v. Super Fresh Foodmarkets, Inc., 640 F. Sup. 1306, 1307 (E.D.Pa. 1986); Main Line Theaters, Inc. v. Paramount Film Distribution Corp., 208 F.2d 990 (3d Cir. 1967). Once reached, the agreement cannot be repudiated by either party. Rather, such an agreement will be summarily enforced by the court. See, e.g., Terwilliger v. Terwilliger, 29 Conn. Sup. 465, 471,293 A.2d 12 (1972). A settlement agreement is a legally enforceable contract to settle, with consideration predicated upon mutuality of agreement. Id., 470. Indeed, such agreements are favored by the law. Id. Furthermore, a settlement agreement is binding upon the parties even if one party to the agreement subsequently changes her mind and seeks to rescind or repudiate said agreement. See, e.g., Oceanic Adventures, Ltd. v. Cantor, 1 CSCR 181 (February 21, 1986, Satter, J.)
Additionally, a public policy exists by which settlement agreements are advocated. As a Mississippi court has noted:
 It is the duty of the courts rather to encourage than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims; and the nature or extent of the rights of each should not be nicely scrutinized. Courts should, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights by parties; the consideration for such agreements is not only valuable, but highly meritorious. They are encouraged because they promote peace, and then CT Page 7547 there is no fraud, and the parties meet on equal terms and adjust their differences, the court will not overlook the compromise, but will hold the parties concluded by the settlement.
Kohler v. Oliver, 114 Miss. 46, 48-49, 74 So. 777 (1917).
In Pascarella v. Bruck, 190 N.J. Super. 118,462 A.2d 186 (App.Div. 1983), counsel for the parties entered into an oral settlement agreement. The trial judge was informed of the settlement and the case was consequently marked "settled" by the clerk. A formal, written agreement was subsequently prepared by the defendant's counsel, who delivered the same to the plaintiffs. Thereafter, the plaintiff wife, Susan Pascarella, telephoned her attorney and refused to follow through with the settlement, stating that "the settlement had been made while she was emotionally pressed." Id., 462 A.2d at 187. Mrs. Pascarella's mother had recently passed away, leaving her feeling "`greatly preoccupied with trying to get her affairs in order while at the same time suffering from bronchitis. . . . [She also felt] quite vulnerable to suggestions, propositions, and terms. . . and [as if she] did not properly reflect upon the situation.'" Id., quoting the Affidavit of Mrs. Pascarella. Additionally, Mr. Pascarella stated, in his affidavit, that he and his wife had "`made a hasty decision' without `proper reflection.'" Id., 188, quoting the Affidavit of Mr. Pascarella.
When the plaintiffs' objected to the enforcement of the settlement agreement, the trial court vacated the same, finding that it did not constitute a binding contract because:
 (1) [T]he judge had had `no hand in any of [the] negotiations'; (2) the settlement was' in an oral form' and had to be put in written form,' and (3) the settlement had not been placed upon the court's record. Despite the fact that neither party contended that the oral agreement was contingent upon being reduced to written form, the trial judge apparently felt that the oral agreement either had to be preserved upon the court record or else it was ineffective as a settlement." had not been approved by the court, placed on the record, nor reduced to writing.
Id., 189.
On appeal to the Appellate Division, that court employed reasoning similar to that articulated in Pugh, CT Page 7548 supra, Main Line Theaters, Inc., supra, Terwilliger, supra, and Oceanic Adventures, Ltd., supra. Pascarella, supra, 189-91. Specifically, the court emphasized that the key consideration is the intention of the parties, not whether the agreement is in writing. Indeed, the court concluded:
 That the agreement was to be memorialized in writing makes it no less a contract where, as here, the parties concluded an agreement by which they intended to be bound. . . . `[P]arties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking.' (Citations omitted.)
Id., 191.
Consequently, the Appellate Division reversed and vacated the trial court's order, and remanded thereto with directions that the defendant's counsel prepare, and the court enter, an order enforcing the settlement. Id., 191. Other cases have reached similar results. See, e.g., Gross v. Penn Mutual Life Insurance Co., 397 F. Sup. 373 (E.D.Pa. 1975); Wong v. Bailey, 752 F.2d 619 (11th Cir. 1985); Montgomery v. Smith, 40 Conn. Sup. 358, 149 A.2d 444 (June 25, 1985, Spear, J.)
In Montgomery, supra, the parties were scheduled to begin a trial on June 15, 1984. On June 14, 1984, the plaintiff and the defendant entered into settlement negotiations and the parties orally agreed that the plaintiff would forego the trial in consideration for payment of $7,000.00 from the defendant. Id., 359. Before the agreement could be stated for the record, the defendant "changed his mind and would not go through with the settlement." Id. The court concluded that the plaintiff had the right to enforce the settlement agreement despite the lack of a formal stipulation on the record. Id., 361.
This court finds that the parties intended to, and did, enter into a settlement agreement, the essential terms of which have been set forth, supra. Such a finding is predicated upon the testimony given before this court at the hearing contesting the settlement agreement, and upon the fact that the parties reported to the court, Dranginis, J., that the matter could be marked as settled. The fact that the plaintiff has had a change of heart as to the terms of the agreement is of no import here. She readily concedes CT Page 7549 that, at the time of the agreement and at the time of the reporting of the same to the court, she did consent to said terms. Testimony of Anne B. Zauner. Consequently, this court will now consider the plaintiff's Statute of Frauds claim.
The Connecticut Statute of Frauds, codified at General Statutes Sec. 52-550, states, in pertinent part, that:
 (a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement is made in writing and signed by the party, or the agent of the party to be charged. . .(4) upon any agreement for the sale of real property or any interest in or concerning real property. . . .
General Statutes Section 52-550.
First, it should be noted that "[t]he statute of frauds [will] not prohibit the sale of real estate pursuant to an oral contract. The effect of the statute is to create a defense to an action on an oral contract." Bishop v. Bordonaro, 20 Conn. App. 58, 66, 563 A.2d 1049
(1989). (Emphasis added.)
"The function of the statute is evidentiary, to prevent enforcement through fraud or perjury of contracts never in fact made." Lynch v. Davis, 181 Conn. 434, 440-41,435 A.2d 977 (1980). The primary purpose of the Statute of Frauds is "`to provide reliable evidence of the existence and the terms of the contract. . . .'" Jacobs v. Thomas,26 Conn. App. 305, 310, 600 A.2d 1378 (1991), quoting Heyman v. CBS, Inc., 178 Conn. 215, 221, 423 A.2d 887 (1979).
Despite the aforementioned rule, an oral promise in open court otherwise subject to the Statute of Frauds is enforceable. See e.g., The Color Design Exchange, Inc. v. Standish, 3 CTLR 585 (April 29, 1991, Satter, J.) In the present case, the agreement was not articulated "on the record." Consequently, The Color of Design Exchange, Inc., is distinguishable from this case. However, of interest to this court is Cantor, supra. In Cantor, supra, the parties announced to the trial judge, Bieluch, J., that the case had been settled. "Judge Bieluch noted on the file jacket: `6/19/85 — after 3 1/2 hr. conf., case reported settled, subject to preparation execution of documents. Papers to be filed w. Bieluch, J., for approval on record. Will terminate whole case. To be filed on or before 7/15/85, 9:30 a.m.'" Id., quoting Judge Bieluch's notation. When the CT Page 7550 agreement was subsequently reduced to writing, the defendant refused to sign the same and further refused to stipulate to a judgment. In defense of this action the defendant raised the Statute of Frauds, claiming that the agreement could not, by its terms, be performed within one year of its making. Cantor, supra, citing General Statutes Section 52-550 (5). Judge Satter found the defendant's claim to be without merit. Cantor, supra.
The reasoning in Cantor, supra, is applicable to the present case. Judge Satter stated that:
 The agreement the plaintiff here seeks to enforce by its motion for entry of judgment is the agreement to settle the case and enter into a stipulated judgment. Clearly that agreement can be performed within one year and falls outside of Section 52-550 (5). The agreement to settle is distinguishable from the terms of settlement and can be separately enforced. Montgomery v. Smith, 40 Conn. Sup. 358, 361 (1985). (Emphasis added.)
Cantor, supra.
In the present case, the agreement the defendant seeks to enforce is the agreement to settle the case and enter into a stipulated judgment. Because this agreement is "distinguishable from the terms of the settlement and can be separately enforced," id., this court can require the parties to comply with their oral contract. Furthermore, because said contract requires the memorialization of its terms and content in writing, compliance with the oral contract, specifically, complying with that provision of the settlement agreement which calls for reducing said settlement to writing, will necessarily result in no violation of the Statute of Frauds.
However, even were Cantor not relevant here, the doctrine of estoppel applies to preserve the settlement agreement. "When the Statute of Frauds is claimed, the doctrine of estoppel may be applied to prevent the use of that statute to accomplish a fraud." DeLuca v. C. W. Blakeslee Sons., Inc., 174 Conn. 535, 544, 391 A.2d 170
(1978); County Fire Door Corp. v. C. F. Wooding Co.,202 Conn. 277, 281 n. 2 520 A.2d 1028 (1987); Smith v. Keystone Mortgage Corp., 7 CSCR 265 (March 2, 1992, Pickett, J.) There are two essential elements to an estoppel:
 [T]he party must do or say something that is intended or calculated to induce another to believe CT Page 7551 in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done.
First Connecticut Small Business Investment Co. v. Arba, Inc., 170 Conn. 168, 174, 355 A.2d 100 (1976).
In the present case, the defendant's reliance upon the settlement agreement resulted in her decision not to immediately reduce said agreement's terms to writing. That (in)action has opened the door for the plaintiff to raise this Statute of Frauds defense. As the court in Weidt v. PLP Realty Partners, 2 CTLR 678 (October 19, 1990, Aronson, J.) stated, "`[e]stoppel "must be made available to thwart real injustice against the plaintiff by the attempt of (the defendants) to use the statute as an engine of fraud."'" Id., quoting Arba, Inc., supra. Therefore, "the equitable doctrine of estoppel may be raised by the [defendant] to prevent the [plaintiff] from using [the Statute of Frauds] as an engine of fraud." Weidt, supra, 681.
Pursuant to the foregoing analysis the parties entered into a binding contract when they reached a settlement agreement. Said contract is not violative of the Statute of Frauds and, in accordance with the recognized public policy of encouraging settlement agreements, Terwilliger, supra, 470, the court therefore shall enforce the settlement agreement at issue here.
Accordingly, the court enters the following orders:
The parties are to:
(1) reduce their settlement agreement to writing;
(2) execute all necessary contracts and deeds;
 (3) consult with this court as to the peripheral details such as agents and dates, as necessary.
 (4) upon completion of the foregoing, this case should be withdrawn pursuant to the agreement.
This shall be accomplished within two weeks of this date.
GILL, J. CT Page 7552