[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#157)
This action is one of six brought by the plaintiff, Gamlestaden PLC, to collect on loans which are allegedly in default.
On October 20, 1994, the defendant, Adam Backstrom, a director of Starlux Corp. (Liberia) (Starlux), filed a revised answer, special defenses, counterclaim and set-off. Count one of the counterclaim, which is at issue here, asserts a claim for breach of contract against the plaintiff and the third party defendants, Gamlestaden AB (GAB), Forvaltnings AB Gamlestaden (FGAB) and Gamlestaden Intressenter AB. In the first count of the counterclaim, the defendant alleges that the plaintiff entered into a series of credit facilities from 1987 to 1991, in order to provide Starlux and its subsidiaries with financing of their CT Page 5602 shipping activities. The defendant alleges that a broader agreement was later entered into, and formally recognized in the fall of 1990, and then expressly continued in December 1990, pursuant to which the plaintiff was to provide additional financial support over at least an 8 month period (the workout plan). This agreement is alleged to be in accordance with a planned divestiture of assets by Starlux as outlined in a December 12 letter of Mr. Claes-Johan Geijer of Starlux. It is this workout plan that the defendant alleges the plaintiff breached by refusing to provide the additional financing promised.
Specifically, the defendant alleges that the relationship between Starlux and the plaintiff began in 1987 when Starlux negotiated a $14 million credit facility with the plaintiff. In 1989, Starlux negotiated a $3.05 million credit facility to be used to finance the purchase of six Spanish flag vessels by its subsidiary, now known as Lineas Ecoa, S.A. (Lineas Ecoa). The defendant alleges that during the negotiation of this facility in early 1989, Mr. Ahlgren of the plaintiff promised the Magnus Lindholm, a director of Starlux, that the plaintiff, GAB or FGAB would provide funds to Starlux in the future, outside of the terms of the credit facility, in order to allow Lineas Ecoa, to refinance loan and defray the cost of flagging out the Spanish flag vessels. On the strength of this representation, Starlux entered into the credit facility and commenced implementation of the Spanish project.
The defendant alleges that in September 1989, Starlux entered into a $12 million revolving loan facility with the plaintiff, which was secured by a personal guarantee of Lindholm. In 1990, Lindholm allegedly contacted Mr. Ahlgren in order to reschedule the dates of the repayment of certain Starlux debts and to procure additional financing. The defendant alleges that as a condition to providing additional financing, the plaintiff compelled Starlux to undertake the winding down and restructuring of certain assets. The defendant alleges that the initial form of the workout plan was an oral understanding between Starlux and Mr. Ragnar, an agent of the plaintiff and GAB and FGAB, which provided that the interest payments to the plaintiff would be funded by new loans to Starlux from GAB through the plaintiff. The defendant further alleges that GAB, through the plaintiff, agreed to provide additional financing to Starlux to ease its cash flow problems while its business activities were being restructured.
The defendant alleges that in December 1990, pursuant to the CT Page 5603 workout plan, the plaintiff extended a $1 million advance to Starlux, which was followed by several other significant advances, including a loan of $2 million from the plaintiff to Castlegar, S.A., which was guaranteed by the defendant. The proceeds of this loan were disbursed to Starlux and its subsidiaries with the knowledge and consent of the plaintiff.
The defendant alleges that the obligation of the plaintiff to provide additional financing under the workout plan was documented in part in March 1991, as an amendment to the 1989 credit facility (the Second Amendment). Specifically, the defendant alleges that the Second Amendment provided that all existing credit facilities and related guarantees would be extended, including the credit facilities of September 25, 1989, February 9, 1989, and July 9, 1990. The defendant alleges that Starlux agreed to the additional terms and conditions of the Second Amendment in consideration of the plaintiff's having loaned, and being prepared to make additional loans outside of the purpose of the original credit facility. The defendant alleges that the Second Amendment required that Starlux deliver collateral, and that the defendant and Lindholm deliver their personal guarantees, which they did in April 1991.
The defendant alleges that pursuant to the Second Amendment, Starlux, on behalf of its subsidiaries Gunvor Shipping Co., Lineas Ecoa and Eastgate Shipping Co., entered into a Negative Pledge and Assignment Agreement (the Negative Pledge Agreement) which extended the life of the credit facilities which were the subject of the Second Agreement. The defendant alleges that assurances were given by the plaintiff that it would extend additional funds to Starlux and in fact, additional funds were advanced by the plaintiff to Starlux.
The defendant alleges that the plaintiff has at all times acted as an alter ego of GAB and FGAB, and that since August 25, 1991, the plaintiff, GAB and FGAB have acted as alter egos of Gamlestaden Intressenter. Accordingly the defendant argues that the corporate veils should be pierced and GAB, FGAB and Gamlestaden Intressenter should be held liable with the plaintiff.
Finally, in conclusion, the defendant alleges that pursuant to the workout plan, the defendant executed a global guarantee, and thereby fulfilled his obligations under the workout plan. The defendant alleges that the plaintiff's refusal to provide the additional financing that was promised has caused him direct and CT Page 5604 consequential damages.
On November 21, 1994, the plaintiff filed a motion to strike the first count of the defendant's revised counterclaim, which was accompanied by a memorandum of law. On December 9, 1994, the defendant filed a memorandum of law in opposition to the motion to strike, and on December 15, 1994, the plaintiff filed a reply memorandum of law.
In accordance with Practice Book § 152 a party may contest the legal sufficiency of any count of a counterclaim by filing a motion to strike the count. In considering a motion to strike, "the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Novametrix Medical Systems v. BOC Group, Inc.,224 Conn. 210, 214-15, 618 A.2d 25 (1992). The facts to be considered by the court on a motion to strike include the facts that are implied and fairly provable under the allegations. Westport Bankand Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490, 495,605 A.2d 862 (1992).
In determining a motion to strike, "`it is of no moment that the plaintiff may not be able to prove [his] allegations at trial. . .' The sole inquiry at this stage is whether the . . . allegations, if proved, state a cause of action." Levine v. Bessand Paul Sigel Hebrew Academy of Greater Hartford, Inc., 39 Conn. Sup. 129,132, 471 A.2d 679 (Super.Ct. 1983). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. . . . The court must construe the facts in the complaint most favorably to the plaintiff." Gordon v. Bridgeport HousingAuthority, 208 Conn. 161, 170, 544 A.2d 1185 (1988). In deciding a motion to strike, the court must consider the claims in the manner most favorable to sustaining their legal sufficiency.Bouchard v. People's Bank, 219 Conn. 465, 471, 594 A.2d 1 (1991).
1. Statute of Frauds
The plaintiff has moved to strike count one of the defendant's revised counterclaim, for breach of contract, on the ground that it states that the plaintiff was obligated to lend certain funds under an oral agreement which does not satisfy the statute of frauds, General Statutes § 52-550.[1] Specifically, the plaintiff argues that the first count of the revised counterclaim is based upon an oral workout plan and that this agreement must satisfy the statute of frauds before it can be enforced. CT Page 5605
The defendant argues that count one of his counterclaim is legally sufficient in that he has alleged that the agreement by the plaintiff to provide additional financing was partially memorialized. The defendant further argues that the part performance by the parties of the workout plan takes it out of the statute of frauds, and that the workout plan falls outside of the statute of frauds because it is an agreement of indefinite duration.
"Courts permit the Statute of Frauds to be raised by a motion to strike when the alleged agreement falls squarely within those categories of agreements required by the statute to be in writing."Boccuzzi v. Murphy, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 112957 (September 12, 1991, Karazin, J.); see also Breen v. Phelps, 186 Conn. 86, 91-92,439 A.2d 1066 (1982). "In order for a demurrer to be sustained on the basis of the Statute of Frauds, it must appear from the Complaint and any writings appended thereto that the plaintiffs could not offer any admissible evidence sufficient to satisfy the Statute of Frauds." Chapel I Association v. Mount VernonAssociation, Superior Court, judicial district of New Haven, Docket No. 023644 (November 30, 1990, Vertefeuille, J.).
The statute of frauds, General Statutes § 52-550(a), provides in pertinent part that "[n]o civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement is made in writing and signed by the party, or the agent of the party, to be charged: . . . (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars."
"The primary purpose of the statute of frauds is `to provide reliable evidence of the existence and the terms of the contract."Jacobs v. Thomas, 26 Conn. App. 305, 310, 600 A.2d 1378 (1991), cert. denied, 221 Conn. 914, 603 A.2d 404 (1992), citing Heyman v.CBS, Inc., 178 Conn. 215, 221, 423 A.2d 887 (1979). "[A] memorandum is sufficient even though it does not recite the underlying contract in its entirety, if it provides reliable evidence that the parties have come to a complete agreement. The function of the statute is evidentiary, to prevent enforcement through fraud or perjury of contract never in fact made." Lynch v.Davis, 181 Conn. 434, 440-41, 435 A.2d 977 (1980).
In the present case, the defendant alleges that the workout plan obligating the plaintiff to provide additional financing was CT Page 5606 partially memorialized by the plaintiff and Starlux in the Second Amendment and the Negative Pledge Agreement. The determination of whether these alleged written agreements sufficiently memorialize the workout plan, so as to provide reliable evidence that the parties have come to a complete agreement, is a determination to be made at trial. Viewing these allegations in the light most favorable to the defendant, the defendant has sufficiently alleged the existence of an agreement sufficient to satisfy the statute of frauds. Accordingly, the plaintiff's motion to strike count one of the counterclaim on the ground of failure to comply with the statute of frauds is denied.
Furthermore, in opposition to the motion to strike, the defendant also argues that the parties' part performance of the workout plan takes it out of the statute of frauds.
Contracts that would otherwise be unenforceable due to the lack of a writing sufficient to comply with the statute of frauds, may nevertheless be enforceable because of part performance.H. Pearce Real Estate Co. v. Kaiser, 176 Conn. 442, 443,408 A.2d 230 (1979). "The acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must be done with the assent, express or implied, or the knowledge of the other party, and be such acts as alter the relations of the parties. . . . The acts must also be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute." (Citations omitted; internal quotation marks omitted.) Ubysz v. DiPietro,185 Conn. 47, 54, 440 A.2d 830 (1981).
In count one of the counterclaim, the defendant argues that the following acts were done in performance of the contract: (1) advances were made by the plaintiff to Starlux pursuant to the workout plan; (2) written agreements were executed pursuant to the workout plan; (3) the plaintiff lent funds in conformance with the workout plan; (4) Starlux repaid the plaintiff $7.2 million pursuant to the workout plan; (5) the plaintiff received additional collateral called for under the workout plan; and (6) the daily activity of the plaintiff and Starlux was in conformance with the workout plan until August 1991. The plaintiff argues that the only acts that may be considered with regard to part performance are the acts of Starlux, which include: (1) the execution of the Second Amendment by Starlux; (2) the repayment by Starlux of $7.2 CT Page 5607 million to the plaintiff; (3) the execution of the collateral documents provided for in the Second Amendment; and (4) the daily contact between Starlux and the plaintiff. The plaintiff further argues that these acts are consistent with the debt owed by Starlux from the existing credit facilities, and that they were not done in performance of the workout plan.
The determination of whether the alleged acts were done in part performance of the workout plan, and are therefore sufficient to take the workout plan outside of the statute of frauds, relies upon evidence which may be adduced at trial. Nevertheless, the allegations by the defendant, viewed in the light most favorable to the defendant, are sufficient allegations of part performance to take the agreement out of the statute of frauds.
Accordingly, it is not necessary for the court to address the defendant's alternate argument for denying the motion to strike on the ground that the statute of frauds is inapplicable because the agreement is of an indefinite duration.
2. Standing
The plaintiff's second ground for the motion to strike is that the first count of the counterclaim alleges the breach of an alleged contract between the plaintiff and Starlux, and therefore, the defendant does not have standing to assert an action for breach of contract. The defendant argues that he was a direct party to the workout plan, and has fulfilled his obligation under the workout plan by executing a guarantee.
"Standing goes to subject matter jurisdiction." Stroiney v.Crescent Lake Tax District, 205 Conn. 290, 294, 533 A.2d 208
(1987). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citations omitted; internal quotation marks omitted.) Sadloski v. Town of Manchester,
CT Page 5608 supra, 228 Conn. 84, quoting Unisys Corp. v. Department of Labor,220 Conn. 689, 693, 600 A.2d 1019 (1991).
"Standing requires no more than a colorable claim of injury; a plaintiff ordinarily establishes his standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Presidential CapitalCorp. v. Reale, 231 Conn. 500, 505, 652 A.2d 489 (1994), quotingMaloney v. Pac, 183 Conn. 313, 321 n. 6, 439 A.2d 349 (1981).
"It is well settled that one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract. . . ." (Internal quotation marks omitted.) Tomlinson v. Board of Education, 226 Conn. 704,718, 629 A.2d 333 (1993). Accordingly, if a plaintiff is neither a party to a contract nor a contemplated beneficiary of a contract, the plaintiff lacks standing to bring a claim for breach of the contract. Id., 718; see also Coburn v. Lenox Homes, Inc.,173 Conn. 567, 570-71, 378 A.2d 599 (1977).
"[A] third party seeking to enforce a contract must allege and prove that the contracting parties intended that the promisor should assume a direct obligation to the third party." Stowe v.Smith, 184 Conn. 194, 196-97, 441 A.2d 81 (1981). It is necessary to "draw the line between those third persons whose benefit is so indirect and incidental that it is not sound policy to let them enforce the contract, and some other persons whose benefit is so direct and substantial and so closely connected with that of the promisee that it is economically desirable to let them enforce it." Id., 197 n. 1. See also Knapp v. New Haven Road Construction Co.,150 Conn. 321, 325, 189 A.2d 386 (1963).
In count one of the counterclaim the defendant alleges that in December 1990, pursuant to the workout agreement, the plaintiff extended a loan of $2 million to Castlegar, the proceeds of which were disbursed to Starlux and its subsidiaries with the knowledge and consent of the plaintiff, GAB and FGAB. The defendant alleges that he executed a guarantee to secure this loan.
The motion to strike count one of the counterclaim is denied since the court finds that the allegations of the defendant are sufficient to show that he is either a party to, or a contemplated beneficiary of, the workout plan. See Tomlinson v. Board ofEducation, supra, 226 Conn. 718; Stowe v. Smith, supra, 184 Conn. 196-97. CT Page 5609
KARAZIN, J.