PATRICIA SMALL *v.* SOUTH NORWALK SAVINGS BANK
(13142)

PETERS, C. J., HEALEY, GLASS, COVELLO and HULL, Js.

Argued November 12, 1987—decision released January 12, 1988

*Dennis G. Everleigh,* with whom were *Keith A. Rubenstein* and, on the brief, *John A. Milici,* for the appellant-appellee (defendant).

*Bruce L. Levin,* for the appellee-appellant (plaintiff).

HULL, J. The plaintiff, Patricia Small, brought suit against the defendant, South Norwalk Savings Bank, to recover for damages arising out of her purchase of a home that, unknown to her, was in a special flood hazard area. The plaintiff's amended complaint alleged in the first count, sounding in tort, that: (1) she contracted to purchase property in Fairfield conditioned on satisfactory mortgage financing and that the defendant bank provided $52,000 first mortgage financing on

that property; (2) in providing said mortgage financing, the defendant negligently failed to advise or inform the plaintiff that the property was located in a special flood hazard area, as required by Title 12 of the Code of Federal Regulations, §§ 339.0 through 339.5; and (3) as a proximate result of the defendant's failure to warn her she purchased the property and moved into it, thereafter suffering great flood damage for which she was not insured. The fourth count[1] repeated the same operative facts and alleged a cause of action in contract claiming that: (1) the defendant's failure to advise or inform the plaintiff that the property was located in a special flood hazard area was in violation of Title 12 of the Code of Federal Regulations, § 339.5 (a), and Title 42 of the United States Code, § 4104a;[2] and (2) in connection with the agreement for mortgage financing, the bank expressly or impliedly represented and warranted to the plaintiff that it would comply with federal law. In failing to give the plaintiff the required notice the defendant bank allegedly breached its contract with the plaintiff.

---

[1] The amended complaint was originally brought in five counts. The plaintiff withdrew the counts against the real estate agent and broker involved and the inspector who examined the house before closing, and the count seeking a declaratory judgment.

[2] "[42 U.S.C. (1976)] § 4104a. NOTIFICATION OF PURCHASER OR LESSEE OF SPECIAL FLOOD HAZARDS IN AREA OF LOCATION OF IMPROVED REAL ESTATE OR MOBILE HOME SECURING LOAN; REGULATIONS PRESCRIBING PROCEDURES

"Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation require such institutions, as a condition of making, increasing, extending, or renewing (after the expiration of thirty days following August 22, 1974) any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary under this chapter or Public Law 93-234 as an area having special flood hazards, to notify the purchaser or lessee (or obtain satisfactory assurances that the seller or lessor has notified the purchaser or lessee) of such special flood hazards, in writing, a reasonable period in advance of the signing of the purchase agreement, lease, or other documents involved in the transaction."

The underlying facts are not in dispute. In connection with her purchase of a house in Fairfield in 1979, the plaintiff engaged an inspector. With respect to evidence of water damage his report stated, "[n]one, no sign of any major flooding." The day she moved into the house the plaintiff observed watermarks about five or six feet off the basement floor, and these marks completely encircled the basement walls. On April 9, 1980, the plaintiff's basement was flooded as a result of a heavy rainstorm, with resultant serious damage to her house and possessions. She learned the next day that her house was in a flood zone and that she had no flood insurance.

The defendant is a state chartered bank and not a member of the federal reserve system. It was, however, insured by the Federal Deposit Insurance Corporation, and, as such, was subject to 12 C.F.R. § 339.5. This section, in 1979, provided that banks such as the defendant "shall, as a condition of making, increasing, extending or renewing any loan secured by improved real estate . . . located or to be located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards, mail or deliver as soon as feasible but not less than 10 days in advance of closing of the transaction . . . a written notice to the borrower stating: (1) That the property securing the loan is or will be located in an area so identified (or in lieu of such notification, the bank may obtain satisfactory written assurance from seller or lessor stating that such seller or lessor has notified the borrower, prior to the execution of any agreement for sale or lease, that the property securing the loan is or will be located in area so identified) and (2) whether Federal disaster relief assistance will be available for the property in the event the property is damaged by a flood in a federally declared disaster. Each insured State nonmember bank shall require the

borrower, prior to closing, to provide the bank with a written acknowledgment that the borrower realizes the property securing the loan is or will be located in an area so identified and that the borrower has received the above-required notice regarding Federal disaster relief assistance." The bank admits that it failed to comply with this regulation. In its mortgage commitment to the plaintiff it failed to check off provision No. 5 which would have indicated that the property was in a flood hazard area. The reason it failed to do so was that its appraiser relied on outdated maps maintained by the bank and failed to check the official flood map on file in the Fairfield town hall.

The case was tried to a jury and, at the conclusion of the evidence, the court granted the defendant's motion for a directed verdict on the fourth count claiming breach of contract. The case went to the jury only on the first count, the negligence claim. The jury returned a verdict for the plaintiff in the amount of $35,000. The plaintiff filed a motion to set aside the directed verdict on the breach of contract count which was denied. The defendant filed motions to set aside the verdict, for a new trial and for judgment notwithstanding the verdict. The plaintiff objected to these motions as untimely under Practice Book § 320.[3] The plaintiff's objection was overruled and the defendant's motions were denied. The court rendered judgment accordingly.

The defendant has appealed and the plaintiff has cross appealed. The defendant has briefed the following

---

[3] "[Practice Book] Sec. 320. MOTIONS IN ARREST OF JUDGMENT, TO SET ASIDE VERDICT OR FOR NEW TRIAL

"Motions in arrest of judgment, whether for extrinsic causes or causes apparent on the record, motions to set aside a verdict and motions for new trials, unless brought by petition served on the adverse party or parties, must be filed with the clerk within five days after the day the verdict is accepted or judgment rendered, exclusive of such days as the clerk's office is not open; provided that for good cause the court may extend this time. The clerk shall notify the trial judge of such filing. Such motions shall state the specific grounds upon which counsel relies."

issues: (1) whether the trial court erred in submitting to the jury as a question of fact the issue whether the defendant bank owed the plaintiff borrower a common law duty to advise her that the property she had contracted to purchase was located within a flood zone; (2) whether 42 U.S.C. § 4012a (b) and § 4104a and the regulations promulgated thereunder create a statutory standard of conduct that if breached would give rise to an action for common law negligence; (3) whether the jury's consideration of damages should have been limited to insurable losses; and (4) whether the court erred in denying the defendant's motion for a directed verdict and its motions to set aside the verdict, for judgment notwithstanding the verdict and for a new trial.

On cross appeal the plaintiff briefed the following issues pertinent to our consideration of this case: (1) whether the trial court erred in holding that the defendant had timely filed a motion to set aside the verdict and, if so, whether appellate review is limited to plain error; and (2) whether the trial court erred in directing the jury to return a verdict for the defendant on the plaintiff's breach of contract count which alleged that by violating 12 C.F.R. § 339.5 the defendant breached the contract, since that regulation, as an existing law, became an implied term of the contract.

We first consider whether the defendant's posttrial motions were timely. The judgment was dated May 17, 1985. On May 23, 1985, the defendant filed motions to set aside the jury verdict and for a new trial. On the same date the defendant filed a motion for judgment notwithstanding the verdict. The plaintiff objected to and moved to strike these three motions on the grounds of untimeliness. All three motions were denied by the court but not on the basis of untimeliness. The court in a memorandum of decision on the motions to set aside the verdict and for a new trial noted that the

motions had been filed six days after the verdict but that a Saturday and Sunday had intervened. Since the clerk's office had not been open either of those days, they had to be excluded and the motions had been timely filed.

Practice Book § 320 provides: "Motions in arrest of judgment, whether for extrinsic causes or causes apparent on the record, motions to set aside a verdict and motions for new trials, unless brought by petition served on the adverse party or parties, *must be filed with the clerk within five days after the day the verdict is accepted or judgment rendered,* exclusive of such days as the clerk's office is not open; provided that for good cause the court may extend this time." (Emphasis added.) Similarly, Practice Book § 321 requires that a motion for judgment notwithstanding the verdict must be filed "within the time stated in Sec. 320."

Practice Book § 405 provides: "Clerk's offices shall be open each weekday from Monday to Friday inclusive, between 9 o'clock in the forenoon and 5 o'clock in the afternoon, but they shall not be open on legal holidays. If the last day for filing any matter in the clerk's office falls on a day on which such office is not open as thus provided . . . then the last day for filing shall be the next business day upon which such office is open." Similarly, General Statutes § 51-347c provides: "If the last day for filing any matter in the clerk's office of the superior court falls on a day on which such office is closed, the last day for such filing shall be the next business day."

If the trial court were correct, the five day period in § 320 would always be seven days. This is not the law in Connecticut. By its very terms, § 405 applies only to the "last day for filing" or terminal day of the time period. See *Aubrey* v. *Meriden,* 121 Conn. 361, 364–65, 185 A. 87 (1936). Our interpretation accords with the

common law rule that "if the last day for performance of certain acts falls on a Sunday or a legal holiday, the doing of that act on the following day would be timely." *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 9, 363 A.2d 1386 (1975). Intervening nonterminal days in which the clerk's office is not open are immaterial. *Krajniak* v. *Wilson,* 157 Conn. 126, 131, 249 A.2d 249 (1968).

No motion to extend the time for filing the defendant's posttrial motions was timely filed nor was there any claim of good cause for such failure. When the time limit to file a motion to set aside the verdict as against the evidence was twenty-four hours this court said: "As we said in *Brown* v. *Congdon,* 50 Conn. 302, 311 [1882], with reference to a motion in arrest of judgment, 'the limitation, although the time is short, is found by experience to be on the whole for the interest of the public. We no more feel at liberty to disregard it on account of the hardship of a particular case than we do to disregard an ordinary statute of limitations for a similar reason.' " *Aubrey* v. *Meriden,* supra, 365. We therefore conclude that the defendant's posttrial motions were untimely.

The defendant's failure to file a timely motion to set aside the verdict limits this court to ascertaining whether there has been plain error. Practice Book § 4185; *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 515, 441 A.2d 163 (1981). In *Pietrorazio,* this court recognized that it was necessary to move to set aside a verdict to obtain appellate review of a claim that the evidence was insufficient to support the verdict. Id., 513. The court noted that commentators have opined that it is unnecessary for an appellant to move to set aside the verdict where the basis of the appeal is a ruling of the trial court claimed to be erroneous. Id., 514. The court did not analyze this view in relation to our practice because the case involved a claim for money

damages and General Statutes (Rev. to 1981) § 52-228b specifically provided that no verdict in a civil action involving a claim for money damages could be set aside except upon a written motion. The court then stated: "To require a written motion to set aside a verdict as a prerequisite to consideration on appeal of trial rulings assigned as error as well as for review of insufficiency of the evidence claims is no marked deviation from current practice, since trial counsel often file such motions as a matter of course immediately following the rendition of an adverse verdict. See 2 Stephenson, Conn. Civ. Proc. (2d Ed.) § 202. This requirement also serves to implement our policy against review of questions not distinctly raised in the trial court. Practice Book § 3063 [now § 4185]. Even where a claim of error has been sufficiently preserved for appellate review it is seldom that its articulation in the heat of trial approaches the clarity and thoroughness of the presentation at a post-trial motion. The statute was designed to afford the trial court a full opportunity to redress any errors which may have occurred at trial before the appellate process is begun." Id., 515. Although this statement is dicta in the *Pietrorazio* case, we adopt it as a proper rule of procedure on appeals in Connecticut.

When our review is limited to the plain error standard, the appellant does not have access to plenary review. Review for plain error " 'is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985)." *Kolich* v. *Shugrue*, 198 Conn. 322, 326, 502 A.2d 918 (1986).

We consider the defendant's claims of error in the light of this rarefied standard of review. The defendant's first two claims of error must be read together as embracing the central issue in its appeal, i.e., that

it did not owe a duty to the plaintiff, the violation of which would constitute an actionable tort, to determine whether the property she had contracted to purchase was located within a flood zone. The defendant, relying on federal cases, argues that since the alleged duty is merely of statutory origin the only legitimate inquiry is whether the federal legislation expressly or impliedly creates a right of action under either federal or state law. The plaintiff does not press a claim to a private implied federal cause of action under 42 U.S.C. § 4104a. Rather, she claims that even if there is no implied federal cause of action under 42 U.S.C. § 4104a, a common law state negligence action may be asserted against a bank for violation of the statute and the cited regulations adopted in furtherance of it. She relies principally on *Wright* v. *Brown,* 167 Conn. 464, 356 A.2d 176 (1975). There, we stated: " 'Where a statute is designed to protect persons against injury, one who has, as a result of its violation, suffered such an injury as the statute was intended to guard against has a good ground of recovery.' " Id., 468. Statutory negligence is actionable upon satisfaction of two conditions: (1) the plaintiff must be a member of the class protected by the statute; and (2) the injury must be of the type the statute was intended to prevent. Id., 468–69. We cannot conclude that the court's charge, which accepted the plaintiff's theory in this regard, constituted plain error. Nor does our review of the defendant's claim that the jury's consideration of damages should have been limited to insurable losses give rise to such a conclusion.

Nothing in the case gives rise to "any manifest injustice amounting to plain error under all the circumstances." *Valley* v. *Fazzina,* 187 Conn. 423, 428, 446 A.2d 1068 (1982). "The doctrine of plain error should be invoked sparingly. To hold otherwise would undermine the requirement that claims of law be raised in the trial court in the first instance." *Berchtold* v. *Maggi,* 191 Conn. 266, 274, 464 A.2d 1 (1983).

Because we find no error on the defendant's appeal we need not reach the issues raised in the plaintiff's cross appeal which we dismiss as moot.

There is no error on the defendant's appeal, and the plaintiff's cross appeal is dismissed as moot.

In this opinion the other justices concurred.