MEREDITH FINAN *v.* JOHN FINAN
(AC 28319)

Bishop, Gruendel and Peters, Js.

Argues February 15—officially released April 29, 2008

*Charles D. Ray*, for the appellant (plaintiff).

*Sperry A. DeCew*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Meredith Finan, appeals from the judgment of the trial court denying her post-judgment motion for contempt against the defendant, John Finan. She claims that the court improperly interpreted § 25-56 of our rules of practice to require a party to serve a request for production of documents no later than five business days before the scheduled hearing date. We agree with the plaintiff and, accordingly, reverse the judgment of the trial court.

The relevant facts largely are undisputed. The parties married on September 11, 1982. On March 11, 2005, the court dissolved their marriage, finding that it had broken down irretrievably without attributing fault to either party as to the cause. The court entered various orders concerning property distribution, alimony, child support and other miscellaneous matters.[1] In particular, the court ordered the defendant to pay to the plaintiff "unallocated alimony and child support in equal semi-monthly installments on the first and fifteenth of each month, the annual sum of $95,000 based on his base salary of $225,000." In addition, the court awarded the plaintiff 35 percent "of any cash bonus or deferred income awarded to the defendant as of the date of payment to him commencing with deferred income awarded to him for the year 2004. [The plaintiff] shall

---

[1] At the time of dissolution, the parties had two minor children.

have the right to and be paid for the next six years, including 2004 and ending in the year 2009."[2]

On August 4, 2006, the plaintiff filed a motion for contempt against the defendant, alleging that "[w]hile the [defendant] has paid [35 percent] based on deferred compensation of $324,354.99, [he] has in addition received the sum of $280,190.00 of which $55,190.00 is in excess of the $225,000.00 base amount. Accordingly, the [defendant] is required to pay the [plaintiff] the sum of $19,316.15, which he has failed to pay to the [plaintiff]." In his objection to the motion for contempt, the defendant alleged that on January 1, 2006, his employment was terminated, and that, pursuant thereto, he received a severance payment of $172,595.64.

On October 25, 2006, five days prior to the scheduled hearing on the motion for contempt, the plaintiff served on the defendant a "request to produce at hearing." That request stated: "Pursuant to Practice Book § 25-56 the [p]laintiff . . . requests that the [defendant] produce the following items at a [h]earing to be held on Monday, October 30, 2006, Superior Court, Stamford, Connecticut as follows: 1. Tax returns for 2005; 2. Evidence of all income received for 2005 and 2006 from employment and/or severance, stock options, deferred compensation, bonuses of any kind and any other income which evidence shall include but not be limited to 1099's, W-2's, statements regarding deferred compensation paid, statements regarding bonuses paid, statements regarding stock options exercised and any

[2] The plaintiff appealed from that judgment of dissolution to this court, which vacated the judgment with respect to the parties' filing of a joint income tax return for 2004 and affirmed the judgment in all other respects. *Finan* v. *Finan*, 100 Conn. App. 297, 313, 918 A.2d 910, cert. granted, 282 Conn. 926, 926 A.2d 666 (2007). Our Supreme Court subsequently granted the plaintiff's petition for certification for appeal, which presently is pending. *Finan* v. *Finan*, 282 Conn. 926, 926 A.2d 666 (2007).

correspondence setting forth any income paid." That same day, the plaintiff filed with the court an amended motion for contempt, which alleged that the defendant had both "failed to pay to the [plaintiff] the sum of $35,160.00" and failed to pay her "[35 percent] of income received from [his] new employment for the balance of 2006."

The court held a hearing on the plaintiff's motion on October 30, 2006. During that hearing, the plaintiff maintained that she had served the request for production on counsel for the defendant five calendar days prior to the hearing, as required by Practice Book § 25-56. The court responded: "[Counsel for the defendant is] allowed to answer Thursday or Friday, and then he has to stay in his office Saturday and Sunday? I don't think so. I don't think that's reasonable. Five days, I think, that's to be business days or workdays." It therefore concluded that the plaintiff's request was untimely.

The defendant testified at the hearing. He confirmed that he received a severance package from ABM-AMRO, his former employer, and estimated its amount to be $172,000. A pay statement from ABM-AMRO, introduced as exhibit six at the hearing, detailed the following items paid to the defendant in 2006:

| Description: | Earnings: |
| --- | --- |
| WCS Keep 1st Tranche Payment | $173,241.67 |
| WCS Keep 2nd Tranche Payment | $151,413.32 |
| US Regular Pay | $ 9,375.00 |
| WCS COBRA | $ 12,276.00 |
| US Severance Length of Serv | $147,115.00 |
| Misc (Int'l) | $123,700.00 |
| Total | $617,120.99 |

Under questioning from opposing counsel, the defendant was unable to reconcile his alleged $172,000 severance package with the specifics of that pay statement. When asked about the items described therein, the

defendant testified: "I really don't know what these
. . . numbers are in front of me because I can't remem-
ber. It's too far long ago to remember what they were.
I did receive a severance package, and I received some
level of deferred comp[ensation]."[3]

The plaintiff testified that she received payments
from the defendant representing 35 percent of the "WCS
Keep 1st Tranche Payment" and the "WCS Keep 2nd
Tranche Payment." At the same time, she testified that
she had not received any payments from the defendant
concerning the "US Regular Pay," the "US Severance
Length of Serv" or the "Misc (Int'l)" items. The plaintiff
opined that, in her view, the judgment of dissolution
required the defendant to pay her 35 percent of those
payments. Conversely, the defendant maintained that
the judgment of dissolution required the defendant only
to pay the plaintiff 35 percent of any cash bonus or
deferred income and argued that his severance package
was neither. The court agreed with the defendant, stat-
ing that the judgment of dissolution lacked any ambigu-
ity: "It's very clear that it's a cash bonus or deferred
compensation. There's nothing in here about a sever-
ance payment. There's nothing in here about a miscella-
neous international payment, and no articulation was
sought. . . . [T]he court's ruling . . . is what it says.
Severance is not a cash bonus. It's not a deferred com-
p[ensation]. Miscellaneous with this international—
whatever that is—we had no testimony from anybody
from [ABM-AMRO] or from any other expert or account-
ing, and I have no idea what it is. It's not bonus as far
as I could tell; therefore, the court finds no contempt."[4]

---

[3] The pay statement indicates a "pay end date" of April 15, 2006. The
defendant's October 30, 2006 testimony came less than seven months later.

[4] Whether the court properly concluded that the dissolution order award-
ing the plaintiff "35 percent of any cash bonus or deferred income awarded
to the defendant as of the date of payment to him commencing with deferred
income awarded to him for the year 2004" through 2009 concerned only cash
bonuses or deferred income and did not encompass severance payments is
not at issue in this appeal. We therefore express no opinion as to the
propriety of that determination.

With that, the court denied the plaintiff's motion, and this appeal followed.

I

On appeal, the plaintiff contends that the court improperly interpreted Practice Book § 25-56 to require a party to serve a request for production of documents no later than five business days before the scheduled hearing date. That claim presents a question of statutory interpretation over which our review is plenary. See *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 439, 797 A.2d 1081 (2002). As our Supreme Court has noted, the rules of statutory construction apply with equal force to our rules of practice. *Thalheim* v. *Greenwich,* 256 Conn. 628, 639, 775 A.2d 947 (2001). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 401–402, 920 A.2d 1000 (2007). Moreover, "[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." (Internal quotation marks omitted.) *Connor* v. *Statewide Grievance Committee*, supra, 439.

Section 25-56 is titled "Production of Documents at Hearing or Trial." It provides in relevant part that "[a]t

the trial management conference prior to the commencement of an evidentiary hearing or trial, *but in no event later than five days before the scheduled hearing date,* either party may serve on the other a request for production of documents and tangible things, in a manner consistent with Sections 13-9 through 13-11. Service may be made in the same manner as a subpoena or consistent with Sections 10-12 through 10-14. . . ." (Emphasis added.) In concluding that the plaintiff's request for production was untimely, the court interpreted that rule to require a party to serve a request for production of documents no later than five *business* days before the scheduled hearing date.

Our interpretation of § 25-56 begins by ascertaining whether it has a plain meaning. The salient provision at issue is the requirement that a party serve on the other a request for production of documents and tangible things "in no event later than five days before the scheduled hearing date . . . ." Practice Book § 25-56 (a). Significantly, § 25-56 makes no reference to business days. By contrast, when our rules of practice measure an applicable time period in business days, they explicitly so provide. See, e.g., Practice Book § 17-53 ("[t]he execution shall issue on the third business day after the filing of the affidavit"); Practice Book § 22-1 (a) ("[t]he chair of the [employment security board of review] shall, within the third business day after such filing, cause the original petition or petitions to be mailed to the clerk of the superior court"); Practice Book § 30-5 (b) ("[a] hearing to determine probable cause and the need for further [child] detention shall be held no later than the next business day following the arrest"); Practice Book § 77-1 (a) ("[t]he appellate court shall hold an expedited hearing on any petition for review on the fifth business day next following the day upon which the certificate of completion provided for by Section 63-8 [c] has been filed with the appellate

clerk"). Section 25-56 plainly does not concern business days. Instead, it permits a party to serve a request for production no later than five days before the date of the scheduled hearing. Neither the court in its signed transcript of its oral decision nor the defendant in this appeal has offered any authority to the contrary in support of the court's interpretation of § 25-56.

To accept the court's interpretation would wreak havoc on our rules of practice. For example, Practice Book § 10-8 requires in relevant part: "Commencing on the return day of the writ, summons and complaint in civil actions, pleadings . . . shall first advance within thirty days from the return day, and any subsequent pleadings . . . shall advance at least one step within each successive period of fifteen days from the preceding pleading . . . ." Practice Book § 3-2 (a) generally requires that "an appearance for a party in a civil or family case should be filed on or before the second day following the return day. . . ." Practice Book § 10-30 requires that "[a]ny defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . ." Like Practice Book § 25-56, those rules do not mention business days. Yet those time periods are measured by calendar days, rather than business days. That practice is irreconcilable with the logic of the trial court in the present case.

In addition, the court's interpretation is inconsistent with the mandate of Practice Book § 7-17 that "[i]f the last day for filing any matter in the clerk's office falls on a day on which such office is not open as thus provided or is closed pursuant to authorization by the administrative judge in consultation with the chief court administrator or the chief court administrator due to the existence of special circumstances, then the last day for filing shall be the next business day upon which

such office is open. . . ." "It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Sears, Roebuck & Co.* v. *Board of Tax Review*, 241 Conn. 749, 765, 699 A.2d 81 (1997). Put simply, if only business days are operable for rules containing specific time periods, such as Practice Book § 25-56, then that provision of Practice Book § 7-17 is unnecessary and without meaning.

The plaintiff calls our attention to *Small* v. *South Norwalk Savings Bank*, 205 Conn. 751, 535 A.2d 1292 (1988), in which our Supreme Court considered a construction similar to that advanced by the trial court in the present case. Following a jury verdict in favor of the plaintiff, the defendant in *Small* filed motions to set aside the verdict and for a new trial. Under Practice Book, 1988, §§ 320 and 321, now Practice Book §§ 16-35 and 16-37, respectively, such motions were required to "be filed with the clerk within five days after the day the verdict is accepted or judgment rendered, exclusive of such days as the clerk's office is not open . . . ." In its memorandum of decision, the trial court in *Small* noted that "the motions had been filed six days after the verdict but that a Saturday and Sunday had intervened. Since the clerk's office had not been open either of those days, [the court determined that] they had to be excluded and the motions had been timely filed." *Small* v. *South Norwalk Savings Bank*, supra, 756–57. On appeal, our Supreme Court concluded otherwise. It explained: "If the trial court were correct, the five day period in [Practice Book] § 320 would always be seven days. This is not the law in Connecticut." *Small* v. *South Norwalk Savings Bank*, supra, 757. Although it acknowledged "the common law rule that if the last day for performance of certain acts falls on a Sunday

or a legal holiday, the doing of that act on the following day would be timely," the court emphasized that "[i]ntervening nonterminal days in which the clerk's office is not open are immaterial." (Citation omitted; internal quotation marks omitted.) Id., 757–58. That precedent informs our interpretation of Practice Book § 25-56 and further persuades us that, contrary to the conclusion of the trial court, § 25-56 does not require service of a request for production no later than five *business* days before the scheduled hearing date.

We also note that, in this appeal, the defendant has taken no position as to the propriety of the court's interpretation of Practice Book § 25-56. His silence on this issue is telling. Instead, the defendant merely argues that the plaintiff's request for production lacked the requisite certification under Practice Book § 10-13.[5] The defendant concedes that the plaintiff mailed that request to him on October 25, 2006. Because that request also was served via facsimile on that date, he argues for the first time on appeal that "there was no verification of proper electronic service [so] there can be no extended, esoteric discussion over business days or intervening days, including weekends." We decline

---

[5] Practice Book § 10-13 provides: "Service upon the attorney or upon a pro se party, except service pursuant to Section 10-12 (c), may be by delivering a copy or by mailing it to the last known address of the attorney or party. Delivery of a copy within this section means handing it to the attorney or to the party; or leaving it at the attorney's office with a person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at the usual place of abode. Delivery of a copy within this rule, if the filing was made electronically in accordance with Section 4-4, may also mean electronic delivery to the last known electronic address of the attorney or party, provided that electronic delivery was consented to in writing by the person served. Service by mail is complete upon mailing. Service by electronic delivery is complete upon sending the electronic notice unless the party making service learns that the attempted service did not reach the electronic address of the person to be served. Service pursuant to Section 10-12 (c) shall be made in the same manner as an original writ and complaint is served or as ordered by the judicial authority."

to address the merits of that unpreserved claim. It is well established that "[w]e will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Histen* v. *Histen*, 98 Conn. App. 729, 737, 911 A.2d 348 (2006). For that reason, Connecticut appellate courts are not bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. Practice Book § 60-5. The defendant's failure to present this claim to the trial court is fatal on appeal.

We conclude that, by its plain language, § 25-56 of our rules of practice requires a party to serve on the other party a request for production of documents no later than five days before the date of the scheduled hearing. Because the plaintiff complied with that requirement, her request for production was timely, and the court improperly concluded otherwise.

II

That determination does not end our inquiry. The question remains as to whether the plaintiff was harmed by the court's determination that her request for production was untimely.[6] "The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Internal quotation marks omitted.) *Kalams* v. *Giachetto*, 268

---

[6] Although he did not phrase his argument in his appellate brief in terms of harm, the defendant argues that "[t]his case is hardly one which can turn on whether the defendant produced documentation."

Conn. 244, 249–50, 842 A.2d 1100 (2004). We conclude that the plaintiff has established such harm.

Two statements in particular persuade us that the court's determination that the request for production was untimely affected the final result. First, when questioned as to the specific compensation described in his pay statement from his former employer, the defendant testified that "I really don't know what these . . . numbers are in front of me because I can't remember. It's too far long ago to remember what they were." Second, in ruling on the plaintiff's motion for contempt, the court addressed the $123,700 "Misc (Int'l)" payment to the defendant as follows: "Miscellaneous with this international—whatever that is—we had no testimony from anybody from [ABM-AMRO] or from any other expert or accounting, and I have no idea what it is."

The plaintiff's request for production sought, inter alia, "[e]vidence of all income received for 2005 and 2006 from employment and/or severance, stock options, deferred compensation, bonuses of any kind and any other income which evidence shall include but not be limited to 1099's, W-2's, statements regarding deferred compensation paid, statements regarding bonuses paid, statements regarding stock options exercised and any correspondence setting forth any income paid." Had the defendant complied with that request, the plaintiff may well have demonstrated whether certain items in the defendant's pay statement, such as the $147,115 "US Severance Length of Serv" payment or the $123,700 "Misc (Int'l)" payment, were either bonuses or deferred compensation, as she maintained. That the court admitted that it had "no idea" what the $123,700 "Misc (Int'l)" payment was and complained that it had no evidence or accounting on the matter confirms that, like the plaintiff, it required additional information to comprehend fully the defendant's pay statement and to consider completely the plaintiff's motion. By excusing

production of the requested documentation, the court impaired the plaintiff's ability to effectively challenge the defendant's testimony concerning the various payments he received from his former employer. Under those circumstances, we cannot say that the court's improper interpretation of Practice Book § 25-56 was harmless. It likely affected the result of the plaintiff's motion for contempt. As such, the plaintiff is entitled to production of the requested documentation and a new hearing on her motion for contempt.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.