******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

WILMINGTON TRUST, NATIONAL ASSOCIATION,
AS TRUSTEE *v.* VICTOR K.
N'GUESSAN ET AL.
(AC 44964)

Bright, C. J., and Alvord and Alexander, Js.

*Syllabus*

The plaintiff sought to foreclose a mortgage on certain real property owned
by the defendant N. N filed various special defenses, and subsequently
filed a request for leave to amend his special defenses to add as an
additional special defense that the foreclosure action was barred by the
doctrines of res judicata and/or collateral estoppel, apparently referenc-
ing a 2011 foreclosure action against him involving the same mortgage
and a prior assignee of the mortgage, which was dismissed for failure
to prosecute with due diligence. The trial court granted a motion for
summary judgment as to liability filed by the plaintiff, and rejected each
of N's special defenses except that it failed to address the special defense
regarding res judicata and collateral estoppel. Thereafter, while a motion
for a judgment of strict foreclosure was pending, the court issued an
order sustaining the plaintiff's objections to N's interrogatories and
requests for production. The court rendered judgment of strict foreclo-
sure, from which N appealed to this court. *Held*:

1. The trial court did not err in granting the plaintiff's motion for summary
judgment without considering the applicability of the doctrines of res
judicata and collateral estoppel as, based on this court's plenary review,
neither doctrine precluded the court from concluding that there were
no genuine issues of material fact as to N's liability: the doctrine of res
judicata was inapplicable as the record indicated that the court in the
2011 foreclosure action dismissed that action and that it had not been
adjudicated on the merits; moreover, the doctrine of collateral estoppel
was inapplicable because, although the same note and mortgage that
were at issue in the 2011 foreclosure action were at issue in this foreclo-
sure action, there was no question that the court was faced with a
different set of events as six years had passed between when the 2011
action was dismissed and the present action was instituted, N made no
payments on the mortgage during those intervening years, submitted
no evidence setting forth any equitable defense for his failure to make
payments, and did not submit any other evidence that was sufficient to
create a genuine issue of material fact as to his liability in the present
action, and, in the absence of such evidence, the court was not obligated
to rely on the trial court's conclusion, when denying summary judgment
in the 2011 action, that there were sufficient factual questions to warrant
a trial.

2. The trial court did not abuse its discretion by sustaining the plaintiff's
objections to N's interrogatories and requests for production: the court
sustained the objections more than one year after rendering summary
judgment, and a review of the record revealed that the discovery sought
by N was not connected to the plaintiff's motion for summary judgment
and, instead, was related to the issue of determining the final debt that
he owed the plaintiff; moreover, N did not articulate how he was harmed
by the court's order on his discovery requests and failed to demonstrate
how receiving responses would have assisted him in creating genuine
issues of material fact as to liability.

Argued April 5—officially released August 2, 2022

*Procedural History*

Action to foreclose a mortgage on certain real prop-
erty owned by the named defendant, and for other relief,
brought to the Superior Court in the judicial district
of Hartford, where the court, *Dubay, J.*, granted the
plaintiff's motion for summary judgment as to liability
against the named defendant; thereafter, the matter was

tried to the court, *M. Taylor, J.*; judgment of strict foreclosure, from which the named defendant appealed to this court. *Affirmed.*

*Maria K. Tougas*, for the appellant (named defendant).

*Victoria L. Forcella*, for the appellee (plaintiff).

*Opinion*

ALEXANDER, J. The defendant Victor K. N'Guessan[1] appeals from the judgment of strict foreclosure rendered by the trial court in favor of the plaintiff, Wilmington Trust.[2] On appeal, the defendant claims that the court (1) erred in granting the plaintiff's motion for summary judgment without considering the applicability of the doctrines of res judicata and collateral estoppel[3] and (2) abused its discretion by sustaining the plaintiff's objections to his interrogatories and requests for production. We disagree and, accordingly, affirm the judgment of the court.

The following facts and procedural history are relevant to our resolution of this appeal. The defendant is the owner of real property in Manchester (property). The plaintiff commenced a foreclosure action against the defendant on May 4, 2017. In a complaint dated April 28, 2017, the plaintiff alleged that on October 13, 2005, the defendant had executed and delivered to Lehman Brothers Bank, FSB, a note in the principal amount of $124,000, secured by a mortgage on the property. The plaintiff further alleged that it became the holder of the note through a series of assignments and that the defendant was in default on the note. The plaintiff sought a judgment of foreclosure.

On December 12, 2017, the defendant filed his answer and asserted three special defenses. On the same date, the defendant filed a notice indicating that he had served upon the plaintiff "his first set of interrogatories and requests for production." On April 10, 2018, the plaintiff filed objections to these interrogatories and requests for production. On July 11, 2018, the defendant filed amended special defenses in which he added a fourth special defense that the plaintiff miscalculated the payoff of the mortgage and misapplied or failed to apply payments the defendant made.

On October 2, 2018, the plaintiff filed a motion for summary judgment as to liability. On December 14, 2018, the defendant filed an objection to the plaintiff's motion. On December 20, 2018, the defendant filed a request for leave to amend his amended special defenses. In his proposed second amended list of special defenses, he requested to add a fifth special defense, which stated: "The subject foreclosure action is barred by the doctrines of res judicata and/or collateral estoppel." The defendant apparently was referencing a previous foreclosure action against him involving the same mortgage, which was commenced in February, 2008, by Aurora Loan Services, LLC (Aurora), a prior assignee of the mortgage. Aurora filed a motion for summary judgment in that case, which the court, *Aurigemma, J.*, denied on July 19, 2011. On December 7, 2015, the court, *Scholl, J.*, dismissed Aurora's foreclosure action.[4]

In the present case, on March 29, 2019, the court,

*Dubay*, *J.*, granted the plaintiff's motion for summary judgment and issued a memorandum of decision. Judge Dubay concluded that the affidavit of Trey Cook, an employee of the plaintiff's loan servicer, established that the plaintiff was the holder of the note executed by the defendant, the plaintiff was in possession of the note prior to the commencement of foreclosure, and the defendant was in default for failure to make payments in accordance with the terms of the note and the mortgage. Judge Dubay further concluded that "[t]he defendant ha[d] submitted no evidence to contradict this representation," and, accordingly, that "the plaintiff ha[d] established a prima facie case in this action." Judge Dubay rejected each of the defendant's four special defenses. He concluded that those special defenses "ha[d] not demonstrated the existence of any disputed material fact." Judge Dubay did not, however, address the fifth special defense regarding res judicata and collateral estoppel, which the defendant purported to raise in his proposed second amended special defenses after the plaintiff filed its motion for summary judgment. On April 9, 2019, the defendant filed a motion to reargue/reconsider, which Judge Dubay denied on April 22, 2019.

On April 29, 2019, the plaintiff filed a motion for a judgment of strict foreclosure and an affidavit of debt. On May 6, 2019, the defendant filed an objection to that motion and to the affidavit of debt. The defendant requested an evidentiary hearing "in accordance with Practice Book § 17-50 as genuine issues exist as to the damages in this case and there are outstanding discovery responses that the plaintiff has not complied with." Additionally, the defendant claimed "a right of setoff against the plaintiff's debt . . . ."

On November 12, 2020, while the plaintiff's motion for a judgment of strict foreclosure was pending, the court, *M. Taylor*, *J.*, issued an order sustaining the plaintiff's objections to the defendant's interrogatories and requests for production. That order stated: "Although the questions posed relate to previously filed pleadings, [Judge Dubay] has apparently ruled that there are no remaining, operable defenses or counterclaims. See motion for reconsideration of summary judgment . . . and other pleadings regarding discovery . . . and the resulting orders by [Judge Dubay]."

On September 7, 2021, a hearing was held before Judge Taylor on the plaintiff's motion for a judgment of strict foreclosure and the defendant's objections. On September 13, 2021, Judge Taylor rendered a judgment of strict foreclosure in favor of the plaintiff. At the entry of judgment, Judge Taylor found that the fair market value of the property was $188,000 and that the debt owed to the plaintiff was $313,335.73. The law day was set for November 16, 2021. This appeal followed. Additional facts and procedural history will be set forth as

necessary.

## I

The defendant first claims that the court erred in granting the plaintiff's motion for summary judgment without considering the applicability of the doctrines of res judicata and collateral estoppel. Although the defendant unsuccessfully attempted to add a special defense asserting that these doctrines apply, his claim is not that the court abused its discretion in denying his request to amend his amended special defenses. Rather, he challenges the court's failure to specifically address his arguments of res judicata and collateral estoppel in his objection to the summary judgment motion. Although the court did not address these arguments, on the basis of our plenary review, we conclude as a matter of law that the defendant cannot prevail on his claims of res judicata and collateral estoppel.

The following procedural history is relevant to this claim. Aurora commenced a foreclosure action against the defendant in 2008 and subsequently moved for summary judgment as to liability. In 2011, the defendant filed an affidavit (2011 affidavit) and objection to Aurora's motion for summary judgment. The defendant claimed that while he was renovating the property, Aurora illegally gained access to the property, took possession of the property, and changed the locks so that he could not access the property. The defendant argued that Aurora's actions prevented him from completing his renovations and from renting the property to tenants. Judge Aurigemma's 2011 order denying Aurora's motion for summary judgment indicated: "The defendant's affidavit has raised equitable issues concerning [Aurora's] conduct. Trial is appropriate to address these issues." The case never went to trial and the court later dismissed the action. Although the record before this court does not reveal why the action was dismissed, the defendant represents that the action "was dismissed because [Aurora] failed to prosecute the case with due diligence."

In the defendant's objection to the motion for summary judgment in the present case, he claimed that because Judge Aurigemma determined that issues of material fact existed that prevented the granting of summary judgment as to liability in the Aurora foreclosure action, the doctrine of collateral estoppel barred the plaintiff, as the "successor mortgagee," from "relitigating the same issue of summary judgment on liability in this case." In the alternative, he claimed that the doctrine of res judicata applied because Aurora elected not to go to trial for the remainder of the time it held the note "and the case was ultimately dismissed, which is considered a final judgment." In the present case, the defendant attached to his objection an affidavit dated December 13, 2018 (2018 affidavit), as well as a copy of the 2011 affidavit from the Aurora foreclosure action.

The 2018 affidavit provided a brief history of the Aurora foreclosure action and repeats many of the facts alleged in his 2011 affidavit.

On appeal, the defendant claims that Judge Dubay erred in not addressing res judicata and collateral estoppel when rendering judgment. The defendant advances the same arguments that he made before the court in his objection to the plaintiff's motion for summary judgment. The defendant contends that there were genuine issues of material fact as to his liability, which the court had determined in the prior Aurora case, and that the court in the present case was precluded from reaching the opposite conclusion when it rendered summary judgment in favor of the plaintiff. We disagree.

The following legal principles are relevant to this claim. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . Additionally, the applicability of res judicata and collateral estoppel presents a question of law over which we employ plenary review." (Citation omitted; internal quotation marks omitted.) *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010).

"Res judicata, or claim preclusion, express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . . Generally, for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." (Citation omitted; internal quotation marks omitted.) *Wheeler* v. *Beachcroft, LLC*, 320 Conn. 146, 156–57, 129 A.3d 677 (2016).

"[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373–74,

727 A.2d 1245 (1999). "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . .

"Additionally, [a]pplication of the doctrine of collateral estoppel is neither statutorily nor constitutionally mandated. The doctrine, rather, is a judicially created rule of reason that is enforced on public policy grounds. . . . Accordingly, as we have observed in regard to the doctrine of res judicata, the decision whether to apply the doctrine of collateral estoppel in any particular case should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . We also have explained that [c]ourts should be careful that the effect of the doctrine does not work an injustice. . . . Thus, [t]he doctrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Citations omitted; internal quotation marks omitted.) *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 344–45, 15 A.3d 601 (2011).

We first note that, although the defendant has argued that the doctrine of res judicata barred the plaintiff's foreclosure action, that doctrine is inapplicable. There is nothing in the record indicating that the court in Aurora's foreclosure action made a decision on the merits when it dismissed that action in 2015. In fact, in his brief to this court, the defendant represents that the Aurora foreclosure action "was dismissed because [Aurora] failed to prosecute the case with due diligence." The plaintiff does not dispute this assertion. Because Aurora's action was dismissed for failure to prosecute and was not adjudicated on the merits, res judicata did not bar the plaintiff from bringing the present action. See *Milgrim* v. *Deluca*, 195 Conn. 191, 194–95, 487 A.2d 522 (1985) (dismissal for failure to prosecute pursuant to predecessor to Practice Book § 14-3

"is not an adjudication on the merits that can be treated as res judicata").[5]

We next turn to the defendant's argument that the doctrine of collateral estoppel precluded the court from granting the plaintiff's motion for summary judgment. Although the defendant's liability was again at issue when the court considered the plaintiff's motion for summary judgment, we are not persuaded that the doctrine of collateral estoppel barred the court from rendering summary judgment in favor of the plaintiff. In denying Aurora's motion for summary judgment in the Aurora foreclosure action, the court concluded that there were genuine issues of material fact as to the defendant's equitable defenses that required a trial. When the court granted the plaintiff's motion for summary judgment in the present case, however, it necessarily determined that the defendant failed to present sufficient evidence to create a genuine issue of material fact as to his equitable defenses to the current action.

"A mortgagee that seeks summary judgment in a foreclosure action has the evidentiary burden of showing that there is no genuine issue of material fact as to any of the prima facie elements, including that it is the owner of the debt. Appellate courts in this state have held that the burden is satisfied when the mortgagee includes in its submissions to the court a sworn affidavit averring that the mortgagee is the holder of the promissory note in question at the time it commenced the action. . . . The evidentiary burden of showing the existence of a disputed material fact then shifts to the defendant. It is for the maker of the note to rebut the presumption that a holder of the note is also the owner of it." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 392, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014).

The court relied on Cook's affidavit to conclude that there were no genuine issues of material fact as to the defendant's liability. The court further concluded that the defendant submitted "no evidence" to contradict Cook's representations in his affidavit. Our plenary review of the record confirms the court's assessment of the evidence before it. The plaintiff commenced the present action in 2017, six years after the defendant averred in his 2011 affidavit that Aurora's actions had impacted his ability to make mortgage payments. Consequently, the issue in the present case was not whether the defendant had a defense to the Aurora foreclosure action, but whether he had a defense to the action instituted six years later. In response to the plaintiff's motion for summary judgment, the defendant did not provide any information since 2011 linking his failure to make his mortgage payments to the plaintiff's conduct or the conduct of its predecessor.[6] For example, in his 2018 affidavit, the defendant repeats much of the information from his 2011 affidavit rather than provid-

ing updates about his continued inability to pay. The defendant did not submit any other evidence which was sufficient to create a genuine issue of material fact as to his liability. In the absence of such evidence, the court was not obligated to rely on the 2011 denial of summary judgment which found that there were sufficient factual questions to warrant a trial.

The United States Supreme Court addressed a similar issue in *Commissioner of Internal Revenue* v. *Sunnen*, 333 U.S. 591, 68 S. Ct. 715, 92 L. Ed. 898 (1948). In *Sunnen*, the court addressed whether a prior determination by the Board of Tax Appeals regarding the tax treatment of royalties paid in certain years precluded a different result as to the royalties paid during subsequent tax years. Id., 596–97. As the court explained: "[C]ollateral estoppel is a doctrine capable of being applied so as to avoid an undue disparity in the impact of income tax liability. A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. . . . [Collateral estoppel] is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time . . . ." (Citation omitted.) Id., 599.

"Of course, where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. . . . And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. *But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to make an independent examination of the legal matters at issue. . . . Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment.*" (Citations omitted; emphasis added; footnote omitted.) Id., 601–602.

In the present case, although the same note and mortgage that were at issue in the Aurora case are at issue in this case, there is no question that the court in the present case was faced with a different set of events. Six years passed between when the Aurora case was dismissed and the present action was instituted. Nevertheless, it is undisputed that the defendant made no payments on the mortgage during those intervening years. At the same time, the defendant submitted no evidence with his objection to the plaintiff's motion for summary judgment setting forth any equitable defense for his failure to make payments during those six years. Consequently, he cannot rely solely on the Aurora court's conclusion that there was a genuine issue of material fact in 2011 as binding the court in the present action to conclude that such an issue of fact still exists.

On the basis of our plenary review of the defendant's claim, we conclude that neither the doctrine of res judicata nor the doctrine of collateral estoppel precluded the court from concluding that there were no genuine issues of material fact as to the defendant's liability.

## II

The defendant next claims that the court abused its discretion by sustaining the plaintiff's objections to his interrogatories and requests for production. We disagree.

We begin by setting forth the standard of review and legal principles applicable to this claim. Our Supreme Court has "long recognized that the granting or denial of a discovery request rests in the sound discretion of the [trial] court, and is subject to reversal only if such an order constitutes an abuse of that discretion. . . . [I]t is only in rare instances that the trial court's decision will be disturbed. . . . Therefore, we must discern whether the court could [have] reasonably conclude[d] as it did." (Internal quotation marks omitted.) *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 7, 826 A.2d 1088 (2003).

In the present case, Judge Dubay did not rule on the plaintiff's objections to the defendant's interrogatories and requests for production prior to granting the plaintiff's motion for summary judgment. Rather, Judge Taylor sustained the plaintiff's objections on November 12, 2020, more than one year after Judge Dubay had rendered summary judgment. Our review of the record reveals that the discovery sought by the defendant was not connected to the plaintiff's motion for summary judgment. In his objection to the motion for summary judgment, the defendant did not claim any issues regarding discovery, nor did he raise any arguments related to the plaintiff's objections to his discovery requests. At no point did he request that the court postpone its decision on the plaintiff's motion for summary

judgment so that he could conduct additional discovery. Instead, the defendant's discovery requests related to the issue of determining the final debt that he owed the plaintiff.

Furthermore, on appeal to this court, the defendant does not articulate how he was harmed by the court's order on his discovery requests. He has failed to demonstrate how receiving responses to these requests would have assisted him in creating genuine issues of material fact as to liability. See *Shaw* v. *Freeman*, 134 Conn. App. 76, 89, 38 A.3d 1231 (2012) (no abuse of discretion in sustaining objections to discovery requests where party failed to demonstrate how responses to requests would have assisted in prosecuting party's claims or that discovery sought would have created genuine issue of material fact). Instead, he broadly argues that the court's "denial . . . of the most basic of fundamental rights to engage in any discovery in a civil action prior to the entry of a final judgment" constituted an abuse of discretion. Simply put, the defendant has failed to demonstrate how these responses might have kept the court from rendering a judgment of strict foreclosure. See *Finan* v. *Finan*, 107 Conn. App. 369, 379, 945 A.2d 476 (2008) ("[i]n the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless" (internal quotation marks omitted)). Accordingly, we conclude that the defendant has failed to establish that the court abused its discretion in sustaining the plaintiff's objections to his discovery requests.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] The other defendant named in the plaintiff's complaint, Mortgage Electronic Registration Systems, Inc., did not participate in this appeal. Accordingly, we refer to N'Guessan as the defendant.

[2] The plaintiff's full name is Wilmington Trust, National Association Not in Its Individual Capacity but Solely as Successor Trustee to Citibank, N.A. as Trustee to Lehmans XS Trust Mortgage Pass-Through Certificates, Series 2005-8.

[3] The defendant also sought to add a four count counterclaim when he filed his motion to amend his answer and special defenses. The four counts alleged vexatious litigation, abuse of process, negligence, and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., on the part of the plaintiff. The plaintiff objected to the defendant's attempt to add this counterclaim. The court, *Dubay, J.*, did not rule on the plaintiff's objection prior to rendering summary judgment. Rather, in a subsequent order, the court, *M. Taylor, J.*, stated that Judge Dubay "ha[d] apparently ruled that there [were] no remaining, operable defenses or counterclaims." The defendant has not briefed any claims with respect to his counterclaim and, thus, we deem any issues related to the court's disposition of the counterclaim to be abandoned on appeal.

[4] Additional information about the foreclosure action commenced by Aurora will be provided in part I of this opinion.

[5] Additionally, at oral argument, this court inquired about which judgment served as the basis for the defendant's res judicata argument. The defendant did not directly answer the court's question. Rather, the defendant's counsel stated that his arguments regarding res judicata were "not as strong" as his arguments regarding collateral estoppel.

[6] A review of the record indicates that the defendant has not made any mortgage payments since filing the 2011 affidavit.